1   SEAN REIS (sreis@edelson.com) SBN 184044
    30021 Tomas Street, Suite 300
2   Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
3   Fax: (949) 459-2123

4   JAY EDELSON* (jedelson@edelson.com)
    ARI J. SCHARG* (ascharg@edelson.com)
5   EDELSON MCGUIRE, LLC
    350 North LaSalle Street, Suite 1300
6   Chicago, Illinois 60654
    Telephone: (312) 589-6370
7   Fax: (312) 589-6378
8   *Pro hac vice admission to be sought

9   ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13
    PETER DEACON, individually and on          )   Case No.
14  behalf of all others similarly             )
    situated,                                  )   **11                4674**
15                                             )   COMPLAINT FOR:
                                               )
16                      Plaintiff,             )
                                               )   **(1) Violations of Michigan's Video Rental**
17  v.                                         )       **Privacy Act, M.C.L. § 445.1712**
                                               )   **(2) Violations of the Michigan Consumer**
18  PANDORA MEDIA, INC., a                     )       **Protection Act, M.C.L. § 445.903**
    Delaware corporation,                      )
19                                             )   **DEMAND FOR JURY TRIAL**
                                               )
20                      Defendant.             )   **CLASS ACTION**
                                               )
21                                             )
                                               )
22                                             )
                                               )
23                                             )
                                               )
24  _____)

25

26

27

28
    _____
    COMPLAINT

Plaintiff Deacon ("Plaintiff"), by and through his attorneys, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, complains and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Deacon brings this Class Action Complaint against Defendant Pandora Media, Inc. ("Defendant" or "Pandora") for the intentional disclosure of its users' private music listening histories in violation of Michigan's Video Rental Privacy Act, M.C.L. § 445.1712 ("VRPA"), and the Michigan Consumer Protection Act, M.C.L. § 445.903 ("MCPA").

2. Pandora owns and operates the website www.Pandora.com. Pandora's business model is essentially that of a massive for-profit sound recording library. Through its website, Pandora allows users to borrow digital sound recordings for the duration of song(s). This online system is monetized through third party advertisements and the option to purchase sound recordings from business partners such as Amazon.com and Apple, Inc.

3. After creating an account, Pandora users build customized "stations" based upon inputted musical preferences, *i.e.* artist, specific song, and genre of music. Pandora then lends a continuous stream of songs tailored to the individual's tastes. For instance, a user could build a station based on a preference for the Rolling Stones, or the song "Paint it Black," or the genre "Rock & Roll," and receive songs containing similar musical attributes.

4. Pandora catalogues past "stations" created by a user and stores them in conjunction with the individual's personalized profile page. Users may access their profile pages with login credentials via the Internet through a variety of media including computers, smart-phones, tablet computers, and other mobile devices.[1]

---

[1] *See*, Pandora Media, Inc., Registration Statement (Form S-1) (Feb. 11, 2011), *available at* http://www.sec.gov/Archives/edgar/data/1230276/000119312511032963/ds1.htm (Pandora "uses intrinsic qualities of music to initially create stations and then adapts playlists in real-time based on the individual feedback of each listener").

COMPLAINT

5.      Recognizing the sensitivity of the information that it stores about its customers, Pandora had at all relevant times a governing Privacy Policy, which promised to safeguard users' private music listening histories. Unfortunately, Pandora has willfully violated its users' privacy rights in at least two (2) primary ways.

6.  First, Pandora asserted that users' profile pages—containing information such as user name, musical preferences, favorite songs, and listening history—would be available solely to other registered Pandora users, *and* obtainable only to those registered users with knowledge of an individual's unique-mail address. Instead, Pandora made these records publicly available and searchable on the World Wide Web for anyone to view.

7.      Second, in April of 2010, Pandora unilaterally integrated its users' profile pages with their Facebook accounts. As a result, Pandora released sensitive listening records to all of its users' Facebook "friends." Moreover, any privacy afforded to individuals using pseudonymous e-mail addresses was destroyed, as the Facebook integration automatically correlated users' existing user names with their actual names, and automatically made users' musical preferences immediately available to all of their Facebook contacts.

8.      The VRPA protects Michigan citizens from the very type of disclosures described herein by prohibiting, *inter alia*, companies from releasing records containing information about a person's music listening history.

9.      Pandora's intentional disclosure of its Michigan users' personal music listening history records demonstrates a fundamental disregard for their legal rights to privacy. Because of Pandora's reckless decision to disclose this information, Plaintiff and the Classes are entitled to statutory damages of $5,000 per person under the VRPA. M.C.L. § 445.1715(a).

## PARTIES

10.     Plaintiff Deacon is a natural person and citizen of Michigan.

COMPLAINT

11.     Defendant Pandora Media, Inc. is a Delaware corporation with its principal place of business at 2101 Webster Street, Suite 1650, Oakland, California, 94612. Pandora does business throughout California and the United States.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

13.     This Court has personal jurisdiction over Pandora because it maintains its corporate headquarters in this District. Venue is proper under 28 U.S.C. § 1391(a) because Pandora is headquartered in this District.

## INTRADISTRICT ASSIGNMENT

14.     Pursuant to Civil Local Rule 3-2(d), this case shall be assigned to the Oakland Division.

## FACTUAL BACKGROUND

### I.   Michigan's Video Rental Privacy Act

15.     In 1988, members of the United States Senate warned that business records containing information about consumers' purchase and rental of audiovisual materials offer "a window into our loves, likes, and dislikes," and that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 7-8 (1988) (Statements of Sens. Simon and Leahy, respectively).

16.     While the statements of Sens. Simon and Leahy above were accurate at the time they were made, in hindsight, they were nothing short of prescient. During the past 23 years, the practice of digitally storing highly sensitive consumer data has grown exponentially.

17.     Recognizing the need to protect its citizens' privacy rights from companies entrusted to store their private information, the Michigan legislature enacted the VRPA to prohibit the disclosure of certain kinds of customer records. Section 2 of the VRPA states:

COMPLAINT

4

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

18.     Despite the fact that legions of Michigan citizens use Pandora's services, and that Pandora profits from each Michigan resident added to its user-base, Pandora has chosen to ignore its legal obligation to comply with the VRPA.

## II.    Pandora is Governed by the VRPA

19.     Although Pandora's business practices fall within the purview of the VRPA, it has nonetheless chosen to ignore its legal responsibility to comply with the statute. Pandora is "engaged in the business of selling at retail, renting, or lending … sound recordings" under the VRPA, M.C.L. § 445.1712, because it maintains an online library of sound recordings and rents, sells, and/or lends digital sound recording files to its users through its online services.

20.     Indeed, when an individual listens to music through Pandora, Defendant allows the user to temporarily store a digital copy of the song currently playing on their computer. Upon completion of the track, Pandora removes the track from the user's computer. In this way, Pandora "lends" and/or "rents" the song to the user. M.C.L. § 445.1712.

21.     Pandora is also engaged in selling sound recordings to consumers through its website. While listening to a song on Pandora.com, a display screen is presented to the user that offers immediate purchase of the current track through Apple Inc.'s iTunes service or Amazon.com. On information and belief, Pandora financially benefits from each transaction consummated through this process through a profit-sharing arrangement.

COMPLAINT

5

22.     For the same reasons described more fully above, Pandora users are also "customers" within the meaning of the VRPA, M.C.L. § 445.1711 because they purchase, rent, or borrow sound recordings through Pandora's website.

### III.     Pandora Intentionally Discloses its Users' Listening Histories to the Public

23.     Pandora automatically creates a "Personal Page" for each user containing the person's full name, profile information, most recent "station," recent activity, listening history, bookmarked tracks, and bookmarked artists (collectively referred to as "Protected Information").

24.     Users who agreed to Pandora's Terms of Service and Privacy Policy before August 8, 2010 consented to allow only those Pandora registrants who knew their e-mail addresses to locate and view their Personal Pages containing Protected Information. Accordingly, Pandora users could protect their privacy by using pseudonymous user names and/or e-mail addresses.[2]

25.     However, in clear contradiction to its stated policies, Pandora discloses users' Personal Pages and accompanying Protected Information publicly on the World Wide Web.[3]

26.     Worse still, on April 21, 2010, Pandora unilaterally and without consent correlated its users' Pandora accounts with their Facebook accounts, making users' Protected Information accessible to their Facebook contacts.

27.     By automatically associating a person's real name listed on Facebook with that person's Pandora account, users who attempted to remain anonymous by using pseudonymous e-mail addresses and/or usernames had all of their listening history exposed in conjunction with

---

[2]     In fact, many users attempted to protect their anonymity when using Pandora's services—a privacy protection subsequently eliminated when Pandora unilaterally integrated its users accounts with Facebook, discussed *infra*. *See* Jason Brookman, *Closing Pandora's Box*, http://www.cdt.org/blogs/justin-brookman/closing-pandora%E2%80%99s-box (last visited September 19, 2011).

[3]     *See*, Ryan Singel, FYI, Pandora Makes Your Music Public, http://www.wired.com/epicenter/2010/05/pandora-privacy/ (last visited September 19, 2011). Additionally, Pandora users' Personal Pages appear in Google Search results.

COMPLAINT

1   their real names. At no time did Pandora ever receive consent to disclose its users' Protected

2   Information to their Facebook contacts.

3         28.    Responding to public outcry from its decision to integrate individuals' accounts

4   with Facebook without permission, Pandora mass-notified its users in August of 2010 that their

5   Protected Information was publicly available, and provided instruction on how to make that data

6   private.[4] Unfortunately for its users, Pandora's notice was too little too late, as their Protected

7   Information had already been disclosed to their Facebook contacts and the public at-large.

8   By and through these actions, Pandora has intentionally disclosed its Michigan users' Protected

9   Information without consent, in direct violation of the VRPA.

10   **FACTS RELATING TO PLAINTIFF DEACON**

11         29.    Plaintiff Deacon is a resident of the State of Michigan.

12         30.    Deacon created an account with Pandora during or before 2008.

13         31.    At the time Deacon registered with Pandora, its Terms of Service and Privacy

14   Policy failed to indicate that Pandora would disclose his Protected Information.

15         32.    However, at all relevant times, Pandora disclosed Deacon's Protected Information

16   to the public through its website,[5] without Deacon's consent.

17         33.    Additionally, on or about April 21, 2010, Pandora integrated its services with

18   Facebook, and made Deacon's Protected Information available to his Facebook network, without

19   his consent.

20         34.    These disclosures violate the express language of the VRPA, as well as Pandora's

21   own Terms of Use and Privacy Policy.

22

23

24

25

---

26   [4]    *See*, Brookman *supra* note 2.

27   [5]    *See*, Singel *supra* note 3.

28

COMPLAINT

**CLASS ALLEGATIONS**

35.     **Definition of the Class and Subclass:** Plaintiff Deacon brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class and Subclass of similarly situated individuals, defined as follows:

> **The Disclosure Class**: A class consisting of all Michigan residents who registered as users or subscribers of Pandora's services before August 5, 2010.
>
> **The Facebook Disclosure Subclass**: A subclass consisting of all Michigan residents whose Pandora account was automatically integrated with a Facebook account before August 5, 2010.

Excluded from the Class and Subclass are 1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, 3) persons who execute and file a timely request for exclusion, and 4) the legal representatives, successors, or assigns of any such excluded person.

36.     **Numerosity:** The exact number of the members of the Class and Subclass is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class and Subclass consist of millions of individuals and other entities. Class and Subclass members can be easily identified through Defendant's records and public records.

37.     **Commonality:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include but are not limited to the following:

> (a)     whether Pandora's disclosure of its users' Protected Information violates the Video Rental Privacy Act, M.C.L. § 445.1712;
>
> (b)     whether Pandora's integration of its users' accounts with Facebook violates the Video Rental Privacy Act, M.C.L. § 445.1712;

COMPLAINT

8

1          (c)     whether Pandora's conduct violates the Michigan Consumer Protection

2          Act, M.C.L. § 445.903.

3      38.   **Typicality:** The factual and legal bases of Pandora's liability to Plaintiff and to

4  the other members of the Class and Subclass are the same and resulted in injury to Plaintiff and

5  all of the other members of the Class and Subclass. Plaintiff and the other members of the Class

6  and Subclass have all suffered harm as a result of Pandora's wrongful conduct

7      39.   **Adequate Representation:** Plaintiff will fairly and adequately represent and

8  protect the interests of the Class and Subclass members, and have retained counsel competent

9  and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the

10 Class and Subclass and Defendant has no defenses unique to Plaintiff.

11     40.   **Predominance and Superiority:** This class action is appropriate for certification

12 because class proceedings are superior to all other available methods for the fair and efficient

13 adjudication of this controversy, since joinder of all members is impracticable. The damages

14 suffered by the individual members of the Class and Subclass will likely be relatively small,

15 especially given the burden and expense of individual prosecution of the complex litigation

16 necessitated by the actions of Defendant. It would be virtually impossible for the individual

17 members of the Class and Subclass to obtain effective relief from the misconduct of Defendant.

18 Even if members of the Class and Subclass themselves could sustain such individual litigation, it

19 would still not be preferable to a class action, because individual litigation would increase the

20 delay and expense to all parties due to the complex legal and factual controversies presented in

21 this Complaint. By contrast, a class action presents far fewer management difficulties and

22 provides the benefits of single adjudication, economy of scale, and comprehensive supervision

23 by a single court. Economies of time, effort, and expense will be fostered and uniformity of

24 decisions will be ensured.

25     41.   **Policies Generally Applicable to the Class and Subclass:** This class action is

26 also appropriate for certification because Defendant has acted or refused to act on grounds

27

28

COMPLAINT

1    generally applicable to the Class and Subclass, thereby making appropriate final injunctive relief

2    or corresponding declaratory relief with respect to the Class and Subclass as a whole. The

3    policies of the Defendant challenged herein apply to and affect all members of the Class and

4    Subclass uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct,

5    not on facts or law applicable only to Plaintiff.

6

7

8

**FIRST CAUSE OF ACTION**
**Violations of the Video Rental Privacy Act**
**(M.C.L. § 445.1712.)**
**(On Behalf of Plaintiff, the Class, and Subclass)**

9      42.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

10      43.    Pandora users' Protected Information, including full names, Personal Pages,

11    profile information, most recent "station," recent activities, listening histories, bookmarked

12    tracks, and bookmarked artists constitute "record[s] or information concerning the purchase,

13    lease, rental, or borrowing of [sound recordings] by a customer that indicates the identity of the

14    customer" within the meaning of the VRPA, M.C.L. § 445.1712.

15      44.    Despite the fact that Pandora's Privacy Policy stated that it would **only** disclose

16    users' "stations" to other registered Pandora users, it discloses, without consent, users': full

17    names, Personal Pages, profile information, most recent "station," recent activities, listening

18    histories, bookmarked tracks, and bookmarked artists.

19      45.    Also, despite the fact that Pandora's Privacy Policy stated that it would **only**

20    disclose users' "stations" when another registered Pandora user requests such information by

21    email address search, it discloses users' Protected Information on a far greater scope, without

22    users' consent, including to: non-users of Pandora, members of users' Facebook networks, users

23    of social network aggregation services, and Google search users.

24      46.    Pandora's disclosures of its users' Protected Information are disclosures of

25    records or information concerning the purchase, lease, rental, or borrowing of sound recordings

26    indicating the identities of the customers, to persons other than the customers, in violation of the

27    VRPA, M.C.L. § 445.1712.

28

COMPLAINT

10

47.     None of the exceptions provided by the VRPA apply in this case. M.C.L. § 445.1713.

48.     On behalf of himself and the Class and Subclass, Plaintiff Deacon seeks: (1) injunctive relief to remedy the unlawful conduct described herein; (2) statutory damages of $5,000 per Class and Subclass member; and (3) costs and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
#### Violations of the Michigan Consumer Protection Act
#### (M.C.L. § 445.903.)
#### (On Behalf of Plaintiff, the Class, and Subclass)

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     Under the Michigan Consumer Protection Act, "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." M.C.L. § 445.903(1).

51.     By selling, renting and/or lending sound recordings to users, Pandora engages in trade or commerce.

52.     By claiming that Deacon's Protected Information would be available solely to other registered Pandora users with Deacon's e-mail address, but disclosing such information to the public at-large and to his Facebook contacts, Pandora "[f]ail[ed] to reveal facts that [were] material to the transaction in light of representations of fact made in a positive matter." M.C.L. § 445.903(1)(cc).

53.     Because Pandora indicated that Deacon's Protected Information would only be available to other Pandora users with Deacon's e-mail address, Pandora "[f]ail[ed] to reveal a material fact"—that the information was available to the public at-large and to Deacon's Facebook contacts—"the omission of which tend[ed] to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." M.C.L. § 445.903(1)(s).

54.     In the alternative to Paragraphs 52 and 53, by implying that Deacon's Protected Information was only available to other registered Pandora users with his e-mail address, while disclosing that information to the public at-large and Deacon's Facebook contacts, Pandora made

COMPLAINT

1 | "a representation of fact or statement of fact material to the transaction such that [Deacon]

2 | reasonably believe[d] the represented or suggested state of affairs to be other than it actually

3 | [was]." M.C.L. § 445.903(1)(bb).

4 | 55. On behalf of himself and the Class and Subclass, Plaintiff Deacon seeks: (1) an

5 | order declaring that Pandora's conduct alleged above violates the Michigan Consumer Protection

6 | Act, M.C.L. § 445.903; (2) an injunction requiring Pandora to cease its unlawful conduct; and (3)

7 | costs and reasonable attorneys' fees.

8 | **PRAYER FOR RELIEF**

9 | WHEREFORE, Plaintiff Peter Deacon, individually and on behalf of the Class and

10 | Subclass, prays for the following relief:

11 | A. Certify the Class and Subclass as defined above, appoint Plaintiff as Class

12 | representative, and designate his counsel as Class Counsel;

13 | B. Declare that Pandora's conduct as described herein violates the Video Rental

14 | Privacy Act, M.C.L. § 445.1712, and the Michigan Consumer Protection Act, M.C.L. § 445.903;

15 | C. Award statutory damages of $5,000 per Class and Subclass member, as provided

16 | by the Video Rental Privacy Act, M.C.L. § 445.1715(a);

17 | D. Award injunctive and equitable relief as is necessary to protect the interests of the

18 | Plaintiff, the Class and Subclass by requiring Pandora to cease the unlawful disclosures and

19 | misrepresentations discussed herein;

20 | E. Award Plaintiff and the Class and Subclass their reasonable litigation expenses

21 | and attorneys' fees as provided by the Video Rental Privacy Act, M.C.L. § 445.1715(b);

22 | F. Award Plaintiff and the Class and Subclass pre- and post-judgment interest, to the

23 | extent allowable; and

24 | G. Award such other and further relief as equity and justice may require.

25 | **JURY TRIAL**

26 | Plaintiff demands a trial by jury for all issues so triable.

27 |

28 |

COMPLAINT

Dated: September 20, 2011                    Respectfully submitted,


                                    By: _____
                                        Sean Reis
                                        One of the Attorneys for Plaintiff

SEAN REIS (sreis@edelson.com) - SBN 184044
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Fax: (949) 459-2123

JAY EDELSON* (jedelson@edelson.com)
ARI J. SCHARG* (ascharg@edelson.com)
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378
* pro hac vice admission to be sought.

COMPLAINT

13