Jennifer Stisa Granick (Cal. Bar No. 168423)
ZWILLGEN PLLC
425 Market Street, 22nd Floor
San Francisco, CA  94105
(415) 684-8111 (tel)
(415) 397-6309 (fax)
jennifer@zwillgen.com

Marc Zwillinger (*pro hac* pending)
1705 N Street, NW
Washington, D.C.  20036
(202) 296-3585 (main)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

|  |  |
|---|---|
| PETER DEACON, Individually, and on behalf of a class of all others similarly situated, | ) ) ) ) |
|  | ) Case No. 11-CV-4674 SBA |
| Plaintiffs, | ) |
|  | ) DEFENDANT'S NOTICE OF |
| v. | ) MOTION AND MOTION TO |
|  | ) DISMISS; |
|  | ) MEMORANDUM OF POINTS |
| PANDORA MEDIA, INC., | ) AND |
|  | ) AUTHORITIES |
| Defendant. | ) (Fed. R. Civ. P. 12(b)(6)) |
|  | ) |
|  | ) **Date: March 20, 2012** |
|  | ) **Time: 1:00pm** |

1

TABLE OF CONTENTS

2

**NOTICE OF MOTION AND MOTION** ...................................................................................... 1

**STATEMENT OF ISSUES TO BE DECIDED** .................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................... 2

**STATEMENT OF FACTS** .......................................................................................................... 4

**ARGUMENT** .................................................................................................................................... 7

I.      Standard of Review .............................................................................................................. 7

II.     Plaintiff Has Failed to State a Claim under The VRPA ...................................... 7

      A.      Internet Radio Stations Do Not Lend or Rent Sound Recordings Merely
            Because Digital Streaming Technology Operates By Temporarily
            Storing Music During Play ....................................................................................... 8

      B.      Federal Copyright Law Mandates the Conclusion that Pandora Does
            Not Sell, Rent, or Lend Sound Recordings ....................................................... 10

      C.      The Complaint Does Not State a Claim for Disclosure of the Sale of
            Sound Recordings ...................................................................................................... 12

      D.      Plaintiff Lacks Standing to Assert Claims Under the VRPA ......................... 12

      E.      The Complaint Does Not Allege That the Information Disclosed
            "Indicates the Identity of the Consumer" ........................................................... 14

      F.      Pandora Obtained Consent to Disclosure. ........................................................ 14

      G.      Plaintiff Has Not Alleged Actual Damages ...................................................... 16

III.    Plaintiff's Michigan Consumer Protection Act Claim Fails .......................................... 17

      A.      MCPA liability is Precluded Because Pandora's Business Is
            Specifically Authorized by Federal Law. .......................................................... 17

      B.      Plaintiff Did Not Allege or Suffer Loss, Nor Has the Class Suffered
            Actual Damages. ......................................................................................................... 18

      C.      Plaintiff Fails to Allege Reliance ......................................................................... 18

**CONCLUSION** ............................................................................................................................... 19

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) ........................................ 14

*Arista Records LLC v. Launch Media, Inc.*, 578 F.3d 148 (2d Cir. 2009) ................................ 11

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................................... 7

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ............................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 7

*Bonneville Intern. Corp. v. Peters*, 347 F.3d 485 (3d Cir. 2003) ............................................ 11

*Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June 28, 2011) ................................................................................................................................. 16

*Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029 (N.D. Iowa 2011) ............................................................................................................... 16

*Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996) .......................................... 14

*Doe v. Chao*, 540 U.S. 614 (2004) ........................................................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............. 13

*Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002) ................................................................ 11

*Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642 (E.D. Va. 2010) .................... 16, 17

*Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006) ................. 18

*Leong v. Square Enix of Am. Holdings, Inc.*, No. CV09-4484 PSGVBKX, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ................................................................................... 19

*Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ................................ 13

*Lopez v. Smith,* 203 F.3d. 1122 (9th Cir. 2000) ......................................................................... 7

*Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ..................................................................................................................... 13, 14

*Marder v. Lopez,* 450 F.3d 445 (9th Cir. 2006) ......................................................................... 5

*MOAEC, Inc. v. Pandora Media, Inc.,* 607 F. Supp. 2d 980 (W.D. Wisc. 2009) ........................ 4

*Monte Vista Lodge v. Guardian Life Ins. Co. of America,* 384 F.2d 126 (9th Cir. 1967) ............ 9

ii

*Recording Industry Ass'n of America v. Librarian of Congress*, 176 F.3d 528 (D.C. Cir. 1999) ............................................................................................... 10

*Religious Technology Center v. Wollersheim*, 796 F.2d 1076 (9th Cir. 1986).......................... 11

*Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908 (N.D. Cal. 2009) ........................................... 18

*Sherman v. U.S. Parole Com'n*, 502 F.3d 869 (9th Cir. 2007)...................................... 8

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir.1989) ........................................ 11

*Swift v. Zynga Game Network, Inc.*, --- F. Supp. 2d ----, 2011 WL 3419499 (N.D. Cal. 2011) ........................................................................................................ 15

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) .................................... 3

*United States v. Am. Soc. of Composers, Authors, Publishers*, 627 F.3d 64 (2d Cir. 2010) *cert. denied*, 2011 WL 4536526 (U.S. Oct. 3, 2011) .................................. 3, 8, 11

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009)........................ 16

**STATE CASES**

*Kilda v. Braman*, 748 N.W.2d 244 (Mich. Ct. App. 2008) ........................................ 8

*Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007) ................................. 17

*Smith v. Globe Live Ins. Co.*, 597 N.W.2d 28 (Mich. 1999) ...................................... 17

*Zine v. Chrysler Corp.*, 600 N.W.2d 384 (Mich. Ct. App. 1999)........................... 18, 19

**FEDERAL STATUTES**

17 U.S.C. § 106.................................................................................................... 11

17 U.S.C. § 109.................................................................................................. 7, 10

17 U.S.C. § 114.............................................................................................. 10, 18

18 U.S.C. § 2707 ................................................................................................. 14

18 U.S.C. § 2710 .............................................................................................. 7, 14

Digital Performance Right in Sound Recordings Act of 1995, Pub. L. No. 104-39, 109 Stat. 336 ("DPRA") ............................................................................... 10, 11

**STATE STATUTES**

Case No. 11-CV-4674 SBA
*Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*

Cal. Civil Code § 3344 ................................................................................... 16

M.C.L. § 445.903 ................................................................................... 17, 19

M.C.L. § 445.904 ................................................................................... 17, 18

M.C.L. § 445.911(3) ...................................................................................... 18

M.C.L. § 445.1712 .......................................................................................... 13

M.C.L. § 445.1713 .................................................................................. 7, 8, 15

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 7

**MISCELLANEOUS**

Notice and Recordkeeping Requirements for Statutory Licenses, 37 CFR 270.1 *et seq.* .......... 18

Library of Congress, Copyright Office, *Notification of Agreements Under the Webcaster Settlement Act of 2009,* 74 Fed. Reg. 34796 (July 17, 2009).......................... 3

O'Reilly, Chapter 5: Introduction to Streaming Media, Designing Web Audio, By Josh Beggs & Dylan Thede (2001) ......................................................................... 9

Statement of David O. Carson, General Counsel, United States Copyright Office, Before the Subcommittee On Courts, The Internet And Intellectual Property Of The House Committee On The Judiciary,108th Congress, 2d Session July 15, 2004 .............................................................................................................. 10

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on March 20, 2012 at 1:00 PM, or as soon thereafter as may be heard, Defendant Pandora Media, Inc. will move this court to dismiss the Complaint in this matter without leave to amend.[1]

The Court should dismiss plaintiff's claims because the Michigan Video Rental Privacy Act, M.C.L. §445.1713 ("VRPA") does not apply to Pandora, an Internet radio provider, because Pandora does not rent, lend or sell sound recordings.  Additionally, Deacon does not have standing to bring a VRPA claim because he has not: identified any specific personal information he provided to Pandora, alleged that his information was actually disclosed to any particular person, or suffered actual injuries or damages resulting from Pandora's conduct.  The Michigan Consumer Protection Act, M.C.L. § 445.903, *et seq.,* ("MCPA") claim should be dismissed because Pandora's statements were not misleading, the MCPA exempts regulated businesses, Plaintiff has not suffered injury, and Plaintiff has failed to allege reliance on a misstatement or omission.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff fails to state a claim upon which relief may be granted under the VRPA against an Internet streaming radio provider who does not rent, sell, or lend sound recordings.

2.      Whether Plaintiff has standing to bring claims under the VRPA where he has not alleged that he gave Pandora personally identifying information, Pandora actually disclosed any of his personal information to another person, or he was actually injured by Pandora's conduct.

3.      Whether Plaintiff fails to state a claim upon which relief may be granted under MCPA against a regulated entity, where Plaintiff has not alleged injury or reliance on a misstatement or omission.

---

[1] Defendant certifies that it has met and conferred with Plaintiff regarding this motion.

1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Plaintiff's class action is based on a statute passed in 1988 after the Robert Bork

3 nomination hearings – when the nominee's video rental history was leaked to the press – to protect

4 against unauthorized rummaging through the video, book, and music rental records of citizens.

5 Plaintiff is trying to misapply that statute to a modern digital music streaming and social

6 networking service the likes of which did not exist as little as 10 years ago.  It is the latest in a

7 series of such class actions[2] where various plaintiffs strive to apply very narrowly tailored statutes

8 to services well beyond what was intended to be covered at the time.

9

In this action, Plaintiff Peter Deacon ("Deacon") seeks to apply the Michigan Video Rental

10 Privacy Act ("VRPA") to Pandora, an Internet radio provider.  In order to bring Pandora within

11 the scope of the statute, he claims that music digitally streamed over the Internet or via satellite is

12 "rented" or "lent" to listeners, rather than publicly performed as with terrestrial radio.[3]  This claim

13 is baseless, counterintuitive and directly contrary to federal copyright law because **Pandora does**

14 **not rent, lend, or sell sound recordings.**  Instead, it provides customized Internet radio which

15 functions essentially like terrestrial or satellite radio – it plays music it selects for listeners who

16 have no legal right or ability to copy, keep, replay, sell, or redistribute the songs they have heard.[4]

17

Plaintiff seeks to mischaracterize Pandora as a "renter" or "lender" of sound recordings

18 under the VRPA solely because Pandora "allows the user to temporarily store a digital copy of the

19 song currently playing on their computer."  (Compl. ¶ 20).  But, as Pandora's Terms of Use,

20 attached and incorporated into the Complaint, make clear, users are forbidden from storing,

21 copying, or otherwise manipulating songs that are streamed to their computers.  Pandora, like

22 almost all other music and video streaming services, uses a software protocol that stores

23

24 [2] At least three of these actions have been filed by the same law firm that filed this matter, but with different lead plaintiffs.

25

26 [3] Like traditional radio, Pandora is supported by ads.  For a small fee (currently $36 per year) users can have an ad-free experience.  *See* http://www.pandora.com/#!/subscriptionInfo.

27 [4] The plaintiff does not allege that listeners can copy, keep, replay, sell or redistribute the songs that are performed for them.

28

2

"ephemeral copies" of music temporarily during transmission to enable the streaming to work properly.  But such temporary storage does not make Pandora (or other streaming services, as well as certain satellite broadcasters) into "rental" or "lending" services.

Plaintiff's attempt to characterize Pandora as a "lender" not only flies in the face of the common sense understanding of "rent" or "lend," but also conflicts with federal law holding that Internet radio stations that stream music are "performing" it, subject to a statutory license,[5] and *not* selling, renting or lending it.  Instead, an internet "stream … renders the musical work audible as it is received by the client-computer's temporary memory," and as such " is a performance because there is a playing of the song that is perceived simultaneously."  *United States v. Am. Soc. of Composers, Authors, Publishers*, 627 F.3d 64, 74 (2d Cir. 2010) *cert. denied,* 10-1337, 2011 WL 4536526 (U.S. Oct. 3, 2011) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975)).  Thus, federal law bars application of the Michigan statute to Pandora.

The complaint suffers from other fatal deficiencies.  Deacon has not established standing to bring this claim because he has not identified any specific information he provided to Pandora about himself or his listening history (*e.g.* favorite station, bookmarked tracks, bookmarked artists) and which was subsequently disclosed to non-Pandora users.[6]  Deacon does not allege that Pandora disclosed his information to any particular person.[7]  Nor does Deacon alleges actual injuries or damages resulting from Pandora's conduct.  Deacon fails to allege even that his identity was included in the information he gave to Pandora and Pandora revealed to others, despite the fact that a VRPA violation requires a disclosure that indicates the identity of the consumer.

The Complaint's few specific allegations are also consistent with Pandora's terms and conditions, to which Deacon agreed.  (Compl. ¶ 31).  Any alleged sharing is done with the user's

---

[5] Library of Congress, Copyright Office, *Notification of Agreements Under the Webcaster Settlement Act of 2009,* 74 Fed. Reg. 34796 (July 17, 2009), (*available at* http://www.copyright.gov/fedreg/2009/74fr34796.pdf) (last accessed Nov. 28, 2011).

[6] Plaintiff concedes that he consented to sharing of some of this information with some other Pandora users, although the complaint is not clear in that regard.  (Compl. ¶ 24)

[7] The complaint does not provide any detail regarding Plaintiff's own use of the service, save for an allegation that something on his Pandora profile was shared with his Facebook friends.

3

express or implied consent, and the features that are alleged to result in sharing require the user to not only take affirmative action, but to have a public profile.[8]  Thus, any information that is shared at the user's direction, not Pandora's.

Finally, Deacon's tag-along claim under the Michigan Consumer Protection Act ("MCPA") also fails as a matter of law, because: (1) the MCPA does not apply to regulated or licensed industries, and Pandora is licensed under federal Copyright law; and (2) Plaintiff has not alleged and cannot allege loss as required to maintain a class action under that statute.

Some of these deficiencies could be remedied by amendment, but the core flaw cannot: the Michigan VRPA does not apply to radio stations, whether they deliver music over the air, via satellite, or on the Internet.  Accordingly, this case should be dismissed without leave to amend.

## STATEMENT OF FACTS

Pandora is the leader in Internet radio in the United States, offering a personalized experience for its listeners.  (Compl. ¶¶ 3, 4 n. 1).  Pandora has pioneered a new form of radio that uses intrinsic qualities of music to create custom radio stations.  (*Id.*)  To create these stations, users identify to Pandora a song or artist that they like, and Pandora uses proprietary information about the artists' or songs' musical characteristics to play other songs it anticipates users will also like.[9]  (Compl. ¶ 3).  To comply with the statutory license for the webcast of digital music, Pandora users may influence, but not choose, what songs the service plays.  Instead, Pandora plays songs similar to those songs or artists that the user has expressed a preference for based on its own proprietary algorithms.  (Compl. ¶ 3).  Pandora users also have a personal profile page where they may bookmark songs, create and store stations, and publish "likes" to others.  (Compl. ¶ 23).

According to the Complaint, Pandora "temporarily store[s] a digital copy of the song

---

[8] Plaintiff's complaint refers to the user's profile but does not mention that the user has control over the profile page's public or private status.  (Compl. ¶¶ 6 & 23).  Pandora does not rely on the "public" profile setting at this stage because it was not pled in the complaint, but this issue will be raised if the case proceeds.

[9] A full explanation of Pandora's music recommendation technology may be found at *MOAEC, Inc. v. Pandora Media, Inc.*, 607 F. Supp. 2d 980, 1002-04 (W.D. Wisc. 2009).  Pandora characterizes each song based on musical characteristics using its Music Genome Project.

Case No. 11-CV-4674 SBA
*Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*

currently playing on [the user's] computer."  (Compl. ¶20).  That data remains until the song

finishes playing, after which it is deleted.  (Compl. ¶ 20).  Pandora's terms of use, to which all

users must agree, governs use of the service, including the receipt of streaming audio.  (Compl. ¶

24, 31). [10]  Use of the Pandora service is subject to a "limited, non-exclusive, non-transferable

license" conditioned on compliance with the terms of use and privacy policy.  (Decl. of Craig

Sterry ("Sterry Decl.") Exs. A-I, Pandora Terms of Use each at ¶ 2.1).  Those terms of use provide

that users may not "copy, store, edit, change, prepare any derivative work of or alter in any way

any of the tracks streamed through the Pandora Services."  (Sterry Decl. Exs. A-I, Pandora Terms

of Use each at ¶ 3.2).

Pandora provides links to Apple Inc.'s iTunes service and/or to Amazon.com where users

may purchase songs they hear.  (Compl. ¶ 21).  Pandora does not itself sell songs "at retail," nor

does the complaint allege that Pandora discloses information about songs users purchase from

Apple or Amazon.  Pandora's Terms of Use describe its relationship with third-party music

vendors, and provide that Pandora is not responsible directly or indirectly for those sites, services

or their contents or for any goods and services available through a third-party site or service such

as Apple or Amazon.  (Sterry Decl. Exs. A-I, Pandora Terms of Use each at ¶ 13.3).

Pandora users agree to a comprehensive privacy policy when registering.  (Compl. ¶ 24).

The privacy policy in effect on April 21, 2010, the date of the complained of Facebook sharing

(Compl. ¶ 26), made clear that a user's stations were never private and could be accessed in

several ways by other Pandora users.  "Site-wide community features designed to help other

registered users and subscribers find music they like, by making available a registered user's or

subscriber's station either in an anonymous form or to registered users or subscribers who know

---

[10] The contents of these documents may be considered by this Court in determining this Motion
to Dismiss.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (on a motion to dismiss, court
may consider documents referenced by the complaint, are central to the plaintiff's claims, and
the authenticity of which is undisputed).  The complaint makes reference to Pandora's Terms of
Use and Privacy Policy in effect at the time Plaintiff Deacon signed up for the Pandora service
"during or before 2008" (Compl. ¶ 30) and to the policies users agreed to prior to August 8,
2010 (Compl. ¶ 24). Pandora's policies were subject to minor modifications several times during
that time period, but at all relevant times contained the language cited herein.

your email address and specifically request your station by entering your email address in the applicable field on our site." (Sterry Decl. Exs. J-O, Pandora Privacy Policy each at page 2). As to information users post regarding their likes, dislikes, and favorite artists or songs, the policy stated that such "personal pages may be made available to other registered users and subscribers as part of the Pandora Services. The information you post to such personal pages, therefore, may be viewed by visitors to such pages." (*Id.*).

The essence of the complaint is that Pandora violated the VRPA and MCPA by disclosing "Protected Information" to an even broader segment of the public. (Compl. ¶ 43). Plaintiff define "Protected Information" as "full names, Personal Pages, profile information, most recent 'station,' recent activities, listening histories, bookmarked tracks and bookmarked artists." (Compl. ¶ 43). The complaint alleges that this information was disclosed to registered Pandora users, non-users of Pandora, members of users' Facebook networks, users of social network aggregation services, and Google search users. (Compl. ¶ 45). But, as indicated below, the Complaint does not allege whether or what information about Deacon was shared, or to whom it was shared.

Plaintiff Deacon is a Michigan resident who has used Pandora since approximately 2008. (Compl. ¶¶ 29, 30). When registering, Deacon agreed to Pandora's terms of service (Compl. ¶ 31). The complaint is otherwise silent regarding Deacon's use of the service. The complaint does not allege that Deacon provided Pandora with his real name, created custom stations, marked songs as favorites, whether he had a public or private profile or even whether he ever actually used the service after registering. Furthermore, the complaint is silent on whether anyone saw any of Deacon's "Protected Information." Nor does the complaint allege Deacon suffered any actual injury and only requests statutory damages under the VRPA, "injunctive and equitable relief," and "reasonable litigation expenses and attorney's fees." (Compl., Prayer For Relief ¶¶ C, D, E).

1

# ARGUMENT

2

## I.    STANDARD OF REVIEW

3

4        Under Fed. R. Civ. P. 12(b)(6), a court should grant a motion to dismiss where the plaintiff

5 is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

6 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded

7 factual content allows the court to draw the reasonable inference that the defendant is liable for the

8 misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at

9 556).  Where, as here, there is no plausible claim under the statutes alleged and amendment is

10 futile, the court should dismiss without leave to amend.  *See, e.g., Lopez v. Smith*, 203 F.3d 1122,

11 1127 (9th Cir. 2000) (leave to amend need not be allowed where amendment would be futile).

12

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE VRPA

13

14        The VRPA does not cover Pandora or other entities engaged in webcasting or

15 broadcasting.  Michigan passed the VRPA in 1988 as a follow on to the Federal Video Privacy

16 Protection Act of 1988, 18 U.S.C. § 2710.  In 1988, people went to a store or library to obtain

17 books, records, cassette tapes or video cassettes to watch at home and would return those items to

18 the store.  People watched television broadcasts over the air or pay-per-view movies, listened to

19 music played on the radio, or called in to their local disk jockey to request particular songs.  Now,

20 companies like Amazon and Apple have stepped into the shoes of brick and mortar record stores,

21 and sell (and in some cases rent) video recordings.[11]  Similarly, Internet radio stations, like

22 Pandora, webcast performances of sound recordings as traditional radio stations did in 1988.

23        In order to state a claim under the VRPA, a Plaintiff must (1) allege that Pandora sold at

24 retail, rented, or lent sound recordings; (2) disclosed a record or information concerning the

25 purchase, rental, or lending of these materials; and (3) the disclosure indicated the identity of the

26 customer.  M.C.L. § 445.1713.  Even if Plaintiff demonstrates all three elements, he has not stated

27 _____

28 [11] Retailers generally do not rent, lease, or lend sound recordings, because that act requires
specific permission from copyright holders pursuant to 17 U.S.C. § 109(b)(1)(A).

7

1    a claim if the disclosure was "with the written permission of the customer."  M.C.L. § 445.1713.

2          **A.      Internet Radio Stations Do Not Lend or Rent Sound Recordings Merely
              Because Digital Streaming Technology Operates By Temporarily Storing
3             Music During Play**

4          Pandora webcasts music performances and does not sell, rent or lend sound recordings.  As

5    such, it is not subject to the VRPA and this case must be dismissed without leave to amend.  The

6    VRPA applies only to the sale, rental, or lending of sound recordings, not public performances.

7    The Complaint only alleges that Pandora sells, lends or rents sound recordings by "allow[ing] the

8    user to temporarily store a digital copy of the song currently playing on their computer."  (Compl.

9    ¶ 20).  That copy, however, is played *contemporaneously* with transmission and storage on the

10   user's computer because '[u]pon completion of the track, Pandora removes the track from the

11   user's computer." *Id.*; *see United States v. Am. Soc'y of Composers,* 627 F.3d 64, 74 (2d Cir.

12   2010) ("This transmission, like a television or radio broadcast, is a performance because there is a

13   playing of the song that is perceived simultaneously with the transmission.")  As the complaint

14   acknowledged, users may only access or listen to the song "for the duration of the song(s)" as

15   Pandora plays them.  (Compl. ¶ 2).  In fact, the terms of service prohibit the user to store or make

16   any other use of the songs.  (Sterry Decl. Exs. A-I, Pandora Terms of Use each at ¶ 3.2.).  It is

17   Pandora, not the user, who is temporarily storing the song on the user's computer.

18         The temporary storage of a digital copy of a song contemporaneously with playback to

19   users does not constitute lending or renting that song under the common understanding of those

20   terms.  The VRPA does not explicitly define the terms "sell," "rent" or "lease," therefore each

21   term should be given its common meaning.  *Sherman v. U.S. Parole Com'n*, 502 F.3d 869, 874

22   (9th Cir. 2007) ("In the absence of a statutory definition, a term should be accorded its ordinary

23   meaning"); *Kilda v. Braman*, 748 N.W.2d 244, 248 (Mich. Ct. App. 2008) (if a "term is not

24   defined by statute, we may consult a lay dictionary to determine its common, ordinary meaning.")

25         Temporary storage of an ephemeral copy contemporaneous with transmission and

26   performance of the sound recording is not a "rental."  "Rent" means "to grant the possession and

27

28                                                      8

1   enjoyment of in exchange for rent; to take and hold under an agreement to pay rent."[12]  "Lend"

2   means "to give for temporary use on condition that the same or its equivalent be returned … to put

3   at another's temporary disposal."[13]  Pandora does not give its users the right to possess or use

4   music, with or without payment.  It streams songs it chooses over the Internet for its customers'

5   listening enjoyment.  To create a seamless listening experience, streaming technology temporarily

6   stores data in a limited, inaccessible way *solely* to facilitate contemporaneous playback.  Pandora's

7   Terms of Use are clear: users "may **not copy**, **store**, edit, change, prepare any derivative work of

8   or alter in any way any of the tracks streamed through Pandora services."  (Sterry Decl., Exs. A-I

9   each at ¶ 3.2) (emphasis added).  Plaintiff does not allege otherwise.  Users likewise may not

10  circumvent technical protections to prevent such uses.  (*Id.*)  Users may only listen to Pandora

11  songs as the Pandora service plays them.  Moreover, users never "return" this data.  Rather,

12  whatever packets of digital music Pandora sends to and stores on the user's machine are deleted as

13  soon as Pandora completes transmission of the song.  (Compl. ¶ 20).

14          In sum, Pandora's temporary storage of data on users' computers to stream music does not

15  convert the service into a renter or lender of sound recordings.  Those cached or buffered packets

16  merely facilitate Pandora' s contemporaneous playback using Internet streaming technology.[14]

17  Any holding to the contrary would effectively re-characterize all content providers as "renter" or

18  "lenders," since all digital content transmitted over the Internet is at least temporarily cached on

19  every computer in the network path.  Yet, this is the crux of Plaintiff's claim.  The contrary and

20  commonsense conclusion is that the VRPA does not apply to Pandora's service.  *Monte Vista*

21  *Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126, 128 (9th Cir. 1967) ("The language of

22  a statute is the best and most reliable index of its meaning, and where language is clear and

23  _____

24  [12] "rent." *Merriam-Webster.com*. (2011) (*available at* http://www.merriam-webster.com/dictionary/rent).

25  [13] "lend." *Merriam-Webster.com*. (2011) (*available at*  http://www.merriam-webster.com/dictionary/lend.)

26  [14] *See* Josh Beggs & Dylan Thede, *Designing Web Audio, Chapter 5, Introduction to Streaming*

27  *Media* (O'Reilly 2001) (*available at* http://oreilly.com/catalog/sound/chapter/ch05.html) (last accessed November 28, 2011).

28

9

1    unequivocal, it is determinative of construction.")

2         **B.    Federal Copyright Law Mandates the Conclusion that Pandora Does Not Sell, Rent, or Lend Sound Recordings**

3         Federal copyright law draws a bright line between public performances of sound

4    recordings by Internet radio stations and renting, lending, or selling sound recordings.  In 1995,

5    Congress passed the Digital Performance Right in Sound Recordings Act of 1995, Pub. L. No.

6    104-39, 109 Stat. 336 ("DPRA").  The DPRA granted to copyright owners of sound recordings the

7    exclusive right to make public performances of their works by digital audio transmissions, subject

8    to a compulsory license.  17 U.S.C. § 114(d)(2); 17 U.S.C. 106(6); 1995 amends. Par. (6). Pub. L.

9    104-39, § 2, added par. (6); *Recording Industry Ass'n of America v. Librarian of Congress*, 176

10   F.3d 528, 530 (D.C. Cir. 1999).[15]   Internet radio services like Pandora thus pay statutory license

11   fees to SoundExchange, [16] the statutory agent, to publicly perform sound recordings.[17]

12        At the same time, such a public performance cannot also be a rental or loan.  In 1990,

13   Congress prohibited loaning or renting musical recordings without the copyright owner's express

14   permission. 17 U.S.C. 109(b)(1)(A).  Public performances are allowed under the statutory license,

15   while loans and rentals are prohibited without permission.  Accepting Plaintiff's characterization

16   of streaming audio as rental or lending would render all Internet radio providers like Pandora

17   copyright infringers despite their compliance with DRPA.  To the contrary, Federal Courts have

18   uniformly held that streaming, regardless of the various technologies employed, is a "public

19   performance" of a sound recording, because even though the song is copied temporarily, like "a

20   television or radio broadcast … a playing of the song perceived simultaneously with the

21

22   _____

23   [15] *See also* Statement of David O. Carson, General Counsel, United States Copyright Office, Before the Subcommittee On Courts, The Internet And Intellectual Property Of The House

24   Committee On The Judiciary,108th Congress, 2d Session July 15, 2004 (*available at* http://www.copyright.gov/docs/carson071504.pdf) (last visited Nov. 28, 2011).

25   [16] Notice of Designation as Collective Under Statutory License (*available at* http://www.copyright.gov/carp/notice-designation-collective.pdf) (last visited Nov. 28, 2011).

26   [17] *See, e.g.,* John Timmer, Pandora lives! SoundExchange cuts deal on webcasting rates, Ars

27   Technica (July 2009) (*available at* http://arstechnica.com/media/news/2009/07/soundexchange-cuts-deal-on-music-webcasting-rates.ars) (last visited Nov. 28, 2011).

28                                          10

     Case No. 11-CV-4674 SBA
     *Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*

transmission." *United States v. Am. Soc. of Composers, Authors, Publishers*, 627 F.3d 64, 74 (2d Cir. 2010) *cert. denied,* 10-1337, 2011 WL 4536526 (U.S. Oct. 3, 2011). By contrast, a work is sold, rented, or lent when "[c]ompanies transmit a copy of the work to the user, who then plays his unique copy of the song whenever he wants to hear it; because the performance is made by a unique reproduction of the song that was *sold* to the user, the ultimate performance of the song is not "to the public." *Id.* at 75 (emphasis added).

In *Arista Records LLC v. Launch Media, Inc.*, 578 F.3d 148 (2d Cir. 2009), the plaintiff brought claims against LAUNCHCast ("Launch"), which like Pandora, operated "an Internet radio website … which enables a user to create 'stations' that play songs that are within a particular genre or similar to a particular artist or song the user selects." *Id.* at 150. At issue was whether Launch offered an "interactive" service outside the compulsory license regime for digital performances. The court found that the ability to customize radio stations to a listener's preferences did not make Launch interactive, and that the service was compliant with the compulsory licensing scheme for digital public performances of sound recordings. Similarly, in *Bonneville Intern. Corp. v. Peters*, 347 F.3d 485 (3d Cir. 2003), the Third Circuit addressed internet streams of radio broadcasts and noted that "streaming" is distinguishable from exchanging digital copies of sound recordings, which "involve the established exclusive right to reproduction of a sound recording" not a public performance. *Id.* at 489, n. 8. *Arista* and *Bonneville* demonstrate that, Internet radio, like Pandora, is a performance and nothing more.

Nothing in the VRPA suggests that these important legal distinctions should be ignored when interpreting the VRPA. The Court should thus reject Plaintiff's characterization and dismiss Plaintiff's claims.[18]

---

[18] *Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002) (state contract law interpretation may not violate Copyright Act provisions regarding transfer license); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir.1989) (state contract law applies only to the extent it does not interfere with federal copyright law or policy.); *Religious Tech. Center v. Wollersheim*, 796 F.2d 1076, 1089 (9th Cir. 1986) (states trade secret protection cannot conflict with federal copyright law).

Case No. 11-CV-4674 SBA
*Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C. The Complaint Does Not State a Claim for Disclosure of the Sale of Sound Recordings

Plaintiff's assertion that Pandora sells sound recordings by providing links to third parties who do engage in such sales is irrelevant to Plaintiff's cause of action. Deacon asserts that Pandora is in the business of selling sound recordings because, "while listening to a song on Pandora.com, a display screen is presented to the user that offers immediate purchase of the current track through Apple Inc.'s iTunes service or Amazon.com" and Pandora benefits from those sales. (Compl. ¶ 21). Even if the mere presentation of a link where a user may purchase a song were sufficient to constitute "selling at retail," the complaint does not allege that Pandora ever *disclosed* purchases of those sound recordings. The VRPA, as stated above, requires both engagement in the business of selling sound recordings *and* disclosure of records concerning these purchases along with purchaser identity for liability to attach. The complaint, however, only alleges that Pandora disclosed "recent activities, listening histories, bookmarked tracks, and bookmarked artists" (Compl. ¶¶ 23-28) – and does not allege disclosure of songs Deacon or any user may have purchased from iTunes or Amazon's store via the Pandora service.

In any case, Pandora does not sell sound recordings. "Sell" means "to give up (property) to another for something of value (as money)."[19]  Plaintiff alleges only that Pandora enables users who want to purchase a song to click through to the websites of other businesses that provide digital copies of songs in exchange for money. (Compl. ¶ 21). Although Pandora allows users to find songs easily on Apple's iTunes service or Amazon.com, this is not a "sale" by Pandora. The VRPA does not apply to those who advertise sound recordings, only those entities that sell them "at retail." Indeed, in Pandora's terms of use, Plaintiff agreed that "Pandora is not responsible directly or indirectly" for those sites and services or "for any goods and services available through the third-party site or service." (Sperry Decl., Exs. A-F at 3.2).

### D. Plaintiff Lacks Standing to Assert Claims Under the VRPA

Deacon, the sole named plaintiff, has not alleged sufficient facts to demonstrate that *his*

---

[19] See http://www.merriam-webster.com/dictionary/sell?show=0&t=1317080117

rights were violated and that he has standing.  In a class action, at least one named plaintiff must have standing.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001)); *see also Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (quoting *Foster v. Ctr. Twp. of La Porte County*, 798 F.2d 237, 244-45 (7th Cir. 1986)) (dismissal is appropriate where class representative "never had standing.")  In order to have standing, a plaintiff must demonstrate that (1) he has personally suffered a cognizable injury, (2) fairly traceable to the defendant's alleged unlawful conduct, which (3) is redressable by judicial decision.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180- 81 (2000).

Deacon fails to allege any actual injury traceable to Pandora's conduct.  The complaint does not allege what "Protected Information" Deacon's profile contained, whether he bookmarked songs, marked songs as favorites, set up stations, disclosed his real identity, nor does it allege whether Deacon set his user profile to private (which would block sharing) or public, which would allow such sharing.  Furthermore, Deacon does not plead that Pandora actually disclosed any of his information to anyone else.  The VRPA provides that covered entities "shall not disclose to any person" data regarding the sale, rental, or lending of sound recordings that indicates the identity of the consumer."  M.C.L. § 445.1712.  Notably, the VRPA does not penalize simply making data about music preferences available.

The statute's plain text requires actual disclosure to someone other than a customer.  In *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011), this Court dismissed claims under the Stored Communications Act and California consumer protection laws alleging that LinkedIn disclosed "personally identifiable browsing histories" through the use of "cookies" or "beacons."  The Court found that it was "unclear from the face of the complaint what information was actually disclosed to third parties that would lead Plaintiff to suffer emotional harm."  Indeed, the *Low* plaintiff failed to allege "that his browsing history, with embarrassing details of his personal browsing patterns, was actually linked to his identity by LinkedIn and actually transmitted to any third parties."  *Id.* at *3.

13

Like the Plaintiff in *Low*, Deacon has not alleged any actual harm or that his "protected information" was actually disclosed.  Instead, he has only alleged that information was *made available* to Facebook friends and Google Search users, but has not alleged that any such users viewed any VRPA protected data associated with him.  He thus is missing the crucial link of actual disclosure to party other than himself.  As such, he has not stated a claim under VRPA and, thus, does not have the requisite injury in fact for standing to bring this claim.[20]

**E.    The Complaint Does Not Allege That the Information Disclosed "Indicates the Identity of the Consumer"**

To state a VRPA claim, the record disclosed must "indicate the identity of the consumer." There is no Michigan case law defining what information "indicates the identity of the consumer." The analogous federal law, the Video Privacy Protection Act ("VPPA")does not use the same term, instead prohibiting the disclosure of "personally identifiable information," ("PII"), which it defines as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710.

In all cases under the VPPA, the information disclosed was the customer's full name.  *See, e.g., Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 240 (D.N.J. 1996); *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1159 (W.D. Wash. 2010) (request for full name, but referring, in passing to an email address as PII).  A record that "indicates the identity of the consumer" is limited to only those accounts where users have provided their full name—and not to accounts that use unique usernames or email addresses that do not contain a user's full name.  *Id.*  The complaint, however, is silent as to what information was available about Deacon on his Pandora profile or on his Facebook profile.  As such, it does not state a claim.

**F.  Pandora Obtained Consent to Disclosure.**

The VRPA provides that disclosure of the identity of a customer in connection with sale, rental or lending records is permissible "with the written permission of the customer."  M.C.L.

---

[20] Like the VRPA, the SCA provides for minimum statutory damages, but as in *Low* a Plaintiff here must still allege disclosure and some actual damages, *see* 18 U.S.C. § 2707(c).

14

§ 445.1713.  Pandora gave notice and received its users' consent to certain disclosures of the information at issue here.[21]  Plaintiff alleges he started using Pandora in or before 2008.  Further, he alleges he relied on Pandora's privacy policies and terms of use in force prior to August 8, 2010.  (Compl.  ¶¶ 5, 24, 31.)  As described below, Pandora's Privacy Policy made clear that certain information about the user's station and preferences would not be private and would be shared with other Pandora users.  (Sterry Decl., Exs. J-O, Privacy Policy each at 2).  As Plaintiff admits, Pandora's privacy policy containing this term was available at registration and was posted conspicuously on its website throughout the class period. *See, e.g., Swift v. Zynga Game Network, Inc.*, --- F. Supp. 2d ----, 2011 WL 3419499, *8 (N.D. Cal. Aug. 4, 2011) (user bound to terms of service presented via link under "I accept" button).

     With regard to stations, the relevant Privacy Policy stated

> "We offer Site-wide community features designed to help other registered users and subscribers find music they like, by making available a registered user's or subscriber's station either in an anonymous form or to registered users or subscribers who know your email address and specifically request your station by entering your email address in the applicable field on our Site.  Registered users and subscribers may also access features such as message boards that allow other registered users and subscribers to communicate with each other.  **Any information that you send or post via our Site's community features will be considered public information and we cannot be held responsible for any information you choose to make public**."

(Sterry, Dec., Exs. J-O, Privacy Policy each at 2) (emphasis added).  With regard to personal pages, the Pandora Privacy Policy said

> "Each registered user may have the opportunity to post favorite songs, stations or information on personal pages.  These personal pages may be made available to other registered users as part of the Pandora Services.  The information you post to such personal pages, therefore, may be viewed by visitors to such pages.  Your personal page will be identified to others by the local part of the email address you provide to us (i.e., the part of your email address before the @ sign) either alone or in combination with other numbers or letters.  Thus, to the extent your email address includes personal information (such as your full name) the information may be displayed to other registered users and subscribers.  In addition, to the extent that you post other personal information on your personal page, this information may also be

---

[21] Due to the lack of specificity in the complaint, it remains unclear as to the information that was allegedly disclosed about Deacon.

Case No. 11-CV-4674 SBA
*Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*

1

viewed by other registered users and subscribers."

2    (Id. at 2).  Pandora thus obtained the written authorization for certain sharing under the VRPA.

3    Due to the lack of detail in the complaint with regard to what information was shared, and with

4    whom, Pandora cannot explain further how these consent provisions apply to Deacon's conduct.

5    This lack of detail further demonstrates the inadequacy of the plaintiff's complaint.

6        **G.  Plaintiff Has Not Alleged Actual Damages**

7            Plaintiff Deacon alleges no actual damages related to any disclosure of information on his

8    Pandora profile.  The VRPA provides a civil cause of action "*for damages* to the customer

9    identified in a record … disclosed in violation of this act," and provides for the recovery of actual

10   damages, including damages for emotional distress or $5,000, whichever is greater.  In *Cohen v.*

11   *Facebook, Inc.*, C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June 28, 2011), this Court dismissed

12   claims under Cal. Civil Code § 3344, which provides a cause of action for using a person's name

13   in advertising a product for sale and allows recovery of "an amount equal to the greater of seven

14   hundred fifty dollars ($750) or the actual damages suffered."  The court held that a minimum

15   statutory damages amount did not absolve Plaintiff from pleading and proving actual injury.

16   Courts have reached the same conclusion in interpreting other privacy statutes.  *See, e.g., Doe v.*

17   *Chao*, 540 U.S. 614, 619 (2004) (plaintiff must demonstrate actual damages under the Privacy Act

18   of 1974 to recover  under a statute that provides recovery for "actual damages sustained by the

19   individual as a result of the refusal or failure, but in no case shall a person entitled to recovery

20   receive less than the sum of $1,000"); *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 205

21   (4th Cir. 2009) (Claims for violation of Stored Communications Act require proof of actual

22   damages); *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029

23   (N.D. Iowa 2011) (same); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 654 (E.D.

24   Va. 2010) (same).  Because the complaint fails to allege any actual harm, or even that anyone

25   other than Plaintiff actually viewed his profile, the VRPA claim should be dismissed.

26

27

28

16

III.     PLAINTIFF'S MICHIGAN CONSUMER PROTECTION ACT CLAIM FAILS

The Michigan Consumer Protection Act, M.C.L. § 445.903, *et seq.* ("MCPA") prohibits unfair, unconscionable or deceptive methods, acts, or practices.  Plaintiff alleges that Pandora did not disclose that "Protected Information" could be revealed to Facebook contacts and to the public and falsely represented that such information would only be available to other registered Pandora users.  (Compl. ¶¶ 52, 53, 54).  Plaintiff's claims should be dismissed because (1) a regulated business like Pandora is exempt from liability under the MCPA; (2) Plaintiff has not suffered injury; and (3) plaintiff has failed to allege reliance on a misstatement or omission.

### A.     MCPA liability is Precluded Because Pandora's Business Is Specifically Authorized by Federal Law.

M.C.L. § 445.904 precludes MCPA liability for "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  In *Smith v. Globe Live Ins. Co.*, 597 N.W.2d 28 (Mich. 1999), the Michigan Supreme Court interpreted M.C.L. § 445.904 to exclude any defendant whose conduct is specifically authorized by statute, even if the manner in which it conducted business under the statute would violate the MCPA.  Michigan courts have subsequently expanded this interpretation to cover almost any industry whose general business is subject to regulation.  *See Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 521 (Mich. 2007) (any misconduct in building a residential home, is exempt from the MCPA because the general conduct of residential construction is a licensed activity under Michigan law.)

In *Liss*, the plaintiffs sought MCPA liability against a residential home builder who had used poor workmanship in constructing their house.  In rejecting their claim, the Supreme Court of Michigan stated that where the *general transaction* is authorized by law, there is no MCPA liability, even if the specific misconduct would otherwise be actionable.  The general conduct at issue in *Liss* was "residential home building."  *Id.* at 520.  Because "residential home building" requires a license under the Michigan Occupational Code (MOC), the MCPA cannot apply.

Pandora's music streaming business is specifically authorized by the DPRA, 17 U.S.C. § 114 and the Copyright Office regulates its ability to stream music.  *See, e.g.,* Notice And

17

Recordkeeping Requirements For Statutory Licenses, 37 C.F.R. § 270.1 *et seq.*  Just like building

a home is authorized under the MOC and thus outside the MCPA's limited purview, streaming

music is authorized by 17 U.S.C. 114 and regulated by the Copyright Office.  Therefore, the

manner in which Pandora streams music cannot be challenged through M.C.L. § 445.904.

### B. Plaintiff Did Not Allege or Suffer Loss, Nor Has the Class Suffered Actual Damages.

Only "a person who suffers loss as a result of a violation [of the MCPA] may bring a class

action," and then only for the "actual damages caused" by the violation.  M.C.L. § 445.911(3).

Plaintiff has not alleged any loss, and is unlikely to be able to meet that element of the claim

merely even if his personal profile page was disclosed.  In *Hendricks v. DSW Shoe Warehouse,*

*Inc.,* 444 F. Supp. 2d 775 (W.D. Mich. 2006), the plaintiff sued under the MCPA for disclosure of

her credit information due to a data breach.  The plaintiff failed to allege that her personal

information "ha[d] been used to her detriment in any way."  *Id.* at 779.  Rather, she claimed that

her need to proactively purchase credit protection and monitor her credit record to identify any

potential future fraud constituted loss under the MCPA.  The court rejected this as a basis for loss.

Likewise, California courts have adopted the reasoning of *Hendricks* and dismissed breach of

contract cases claiming loss from data disclosure where the plaintiff suffered no identifiable

detriment as a result of the disclosure.  *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908 (N.D. Cal. 2009).

On this basis, Plaintiff's Complaint is facially deficient for failure to allege any loss on the part of

Deacon or actual damages to the Class related to the alleged disclosure.

### C. Plaintiff Fails to Allege Reliance

Under the MCPA, any representation or omission must be one of "material fact."  Under

two of the alleged bases [(bb) and (cc)], the fact must be "important to the transaction or affect[]

the consumer's decision to enter into the transaction."  *Zine v. Chrysler Corp.*, 600 N.W.2d 384

(Mich. Ct. App. 1999).  Subsection (s) of the MCPA also requires a material omission of a fact

that could not reasonably be known by the consumer.  M.C.L. § 445.903(1)(s).

Plaintiff fails to allege that Pandora's privacy practices were material to his decision to

1   sign up for the service, that Plaintiff was specifically aware of Pandora's practices at any given

2   point in time, that Plaintiff could not learn of the policies by reviewing the Terms of Use or

3   Privacy Policy documents, or that when Plaintiff became aware of Pandora's practices he closed

4   his account.  Indeed, the complaint does not allege that Deacon is no longer an active user.  *Leong*

5   *v. Square Enix of Am. Holdings, Inc.*, CV09-4484 PSGVBKX, 2010 WL 1641364 (C.D. Cal. Apr.

6   20, 2010) (plaintiff's decision to maintain a game account following the alleged disclosure of the

7   game's terms and conditions in the user manual undermine the inference that those terms were

8   material).  An MCPA claim may only be maintained on behalf of an individual or individuals who

9   relied on Pandora's privacy representations at the time they signed up for the service.

10         Moreover, Facebook instant personalization occurred after the members of the proposed

11   classes signed up for the Pandora service.  Failure to reveal facts material to the transaction "refers

12   only to information withheld … up to the time the transaction is complete, so that a failure to

13   include information in a disclosure made after the 'transaction' would not be material to that

14   transaction, and thus would not support a claim under MCPA."  *Zine*, 600 N.W.2d at 398.  *Zine* is

15   clear that under M.C.L. § 445.903(1)(cc), materiality is measured at the time of the transaction,

16   and not post-sale.  *Id.*  Thus, any alleged failure to inform or to gain consent for the Facebook

17   personalization, which happened after signing up for Pandora, cannot support MCPA liability.

18                                        **CONCLUSION**

19          Plaintiff's Complaint fails to state a valid claim for a multitude of reasons.  However, this

20   case should be dismissed without leave to amend because each of the causes of action suffers from

21   an irremediable flaw.  The VRPA claim cannot survive because, as a matter of law Pandora does

22   not rent, lend or sell music.  The MCPA claim fails because the VRPA claim does, and also

23   because Pandora is a regulated industry, not subject to that statute.

24

25

26

27

28
                                                  19

1

Dated: November 28, 2011              Signature: _____*/s Jennifer Granick*_____

2                                              Jennifer Stisa Granick
                                               (Cal. Bar No. 168423)

3                                              ZWILLGEN PLLC
                                               425 Market Street, 22nd Floor

4                                              San Francisco, CA  94105
                                               (415) 684-8111 (tel)

5                                              (415) 397-6309 (fax)
                                               jennifer@zwillgen.com

6
                                               *Attorneys for Defendant*

7                                              *Pandora Media, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 11-CV-4674 SBA
*Defendant's Notice of Motion & Motion to Dismiss & Mem. of Points and Authorities in Support*