Marc Zwillinger (*pro hac vice*)
marc@zwillgen.com
ZWILLGEN PLLC
1705 N Street, NW
Washington, D.C.  20036
Tel: (202) 296-3585 (main)

Michele D. Floyd (SBN 163031)
michele.floyd@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, CA 94304
Tel: (650) 798-6755
Facsimile: (650) 798-6701

*Attorneys for Defendant, Pandora Media, Inc.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| PETER DEACON, Individually, and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PANDORA MEDIA, INC.,<br><br>Defendant. | Case No. 4:11-CV-4674-SBA<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**Date: March 20, 2012**<br>**Time: 1:00pm**<br>**Location: Courtroom 1, 4th Fl.**<br>**1301 Clay St.**<br>**Oakland, CA 94612-5212**<br><br>**[Hon. Saundra B. Armstrong]** |

# TABLE OF CONTENTS

I.      Introduction ................................................................................................... 1

II.     Argument ....................................................................................................... 3

        A.     The VRPA Does Not Apply to Internet Radio Stations Like Pandora
               Regardless of How they Broadcast Music ......................................... 3

               1.     Creating a Copy of a Digital Audio File to Facilitate Playback  is
                      Not Renting, Selling, or Lending a Sound Recording ............................ 3

               2.     Pandora's License to Users Makes Clear they Do Not Rent, Lend,
                      or Sell Sound Recordings ....................................................................... 5

               3.     The VRPA Should Be Construed As Consistent With Copyright
                      Law ......................................................................................................... 6

        B.     Deacon Has Not Stated a Claim Under the MCPA ............................ 7

               1.     Deacon's Boilerplate Request for Injunctive Relief is Not
                      Sufficient to Bring a Claim Under the MCPA ......................................... 7

               2.     Plaintiff Failed to Address Materiality. .................................................. 9

               3.     Pandora is a Regulated Industry, Rendering the MCPA
                      Inapplicable .......................................................................................... 10

        C.     The Opposition Confirms That Deacon Himself Has Suffered No Injury. ........ 11

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ............................................................ 5

*Bonneville Int'l Corp. v. Peters*, 347 F.3d 485 (3d Cir. 2003) ...................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 3, 8, 12, 13

*Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE,

    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................................ 12

*In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963

    (N.D. Cal. Sept. 20, 2011) ................................................................................................. 11, 12

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ............................................................................ 4

*Lara v. Cowan*, 848 F. Supp. 1456 (D. Ariz. 1994) ...................................................................... 3

*Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG (VBKx), 2010 WL 1641364

    (C.D. Cal. Apr. 20, 2010) *aff'd* 2011 WL 6364705 (9th Cir. Dec. 20, 2011) ........................ 9

*Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848

    (N.D. Cal. Nov. 11, 2011) ...................................................................................................... 12

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006) ................................................................... 4

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) (*as amended*) ............... 6

*Sablan v. A.B. Won Pat Int'l Airport Auth., Guam*, CIV. 10-00013, 2010 WL 5148202

    (D. Guam Dec. 9, 2010) ........................................................................................................ 13

*San Francisco Tech., Inc. v. McNeil PPC, Inc.*, No. 10-cv-03249-JF/PSG, 2011 WL 941261

    (N.D. Cal. March 18, 2011) ..................................................................................................... 3

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) .......................................................... 6

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................................................... 9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..................................................................... 13

*United States v. Am. Soc. of Composers, Authors, Publishers*, 627 F.3d 64 (2d Cir. 2010) .......... 7

*Weisbuch v. County of Los Angeles*, 119 F.3d 778 (9th Cir. 1997) ............................................... 4

1

**STATE CASES**

*Attorney General v. Diamond Mortgage Co*, 327 N.W.2d 805 (Mich. 1982) ............................ 10

*Dana v. Am. Youth Found.*, 668 N.W.2d 174 (Mich. Ct. App. 2003) ........................................... 6

*Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595 (Mich. Ct. App. 1999) ............. 8

*Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514 (Mich. 2007) .................................................. 10

*Smith v. Globe Life Ins. Co*, 597 N.W.2d 28 (Mich. 1999) ......................................................... 10

*Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512 (E.D. Mich. July 20, 2006) ..... 10

**FEDERAL STATUTES**

17 U.S.C. § 112 ............................................................................................................................... 4

17 U.S.C. § 114(d)(2) ..................................................................................................................... 7

47 U.S.C. § 332(c)(3)(A) ............................................................................................................. 10

Digital Performance Right in Sound Recordings Act of 1995,

  Pub. L. No. 104-39, 109 Stat. 336 ("DPRA") ..................................................................... 7, 10

**STATE STATUTES**

M.C.L. § 445.901, *et seq.* ("MCPA") ................................................................................... *passim*

M.C.L. § 445.1711, *et. seq.* ("VRPA") ................................................................................ *passim*

M.C.L. § 445.1712 ........................................................................................................................ 11

M.C.L. § 445.1713 .......................................................................................................................... 5

M.C.L. § 750.224 .......................................................................................................................... 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

This is a case about whether a radio station sells, rents, or lends sound recordings.  A radio station is not a record store.  This is true whether the radio station plays songs over the airwaves or the Internet.  Deacon believes that by alleging that a radio station could "plausibly" be a record store, his complaint should survive the pleading stage so he can conduct discovery.  But resolution of this discrete issue is a matter of statutory interpretation, and it is well-settled that a court can interpret a statute on a motion to dismiss, particularly when it is dispositive.  Moreover, what Deacon claims to want to learn in discovery – how a Pandora listener might get unintended or unauthorized access to songs Pandora plays – is irrelevant to the threshold legal issue.

In his complaint, Deacon states that "when the song or songs are completed 'Pandora removes the track from the user's computer.'"  Plaintiff's Opposition to Defendant Pandora Media, Inc.'s Motion to Dismiss ("Opp.") at 2 (*citing* Compl. ¶ 20).  Even if a consumer could circumvent Pandora's security measures, breach its terms of service, and preserve a copy of a song streamed over the Internet, it would not change the nature of Pandora's business, just as radio stations do not become record stores because listeners can record songs played over the airwaves.  Nor does Pandora "rent" or "lend" music any more than an ordinary radio station "rents" or "lends" the songs it plays.  This is clear from the commonly understood definitions of "rent" and "lend," and becomes crystallized when the meaning of those terms are put in the context of the copyright laws.  Discovery into how Pandora's technology can be circumvented has no bearing on the threshold question of whether Pandora is a record store.  It is not.  By design, it does not sell, rent, or lend sound recordings and it is precluded from doing so by the federal laws under which it operates.[1]

Deacon attempts to distract the court by suggesting that Pandora is arguing that the Copyright Act preempts his claims.  Pandora is making no such argument.  The terms of the Michigan statute are sufficiently clear on their face that this court can dismiss this case without

---

[1] Deacon appears to abandon his claims that Pandora sells music, by arguing only that Pandora rents or lends music in his brief.  *See* Opp. at 6-8 & Compl. ¶ 21.

resort to any other sources or doctrines.  But there are two places to look to confirm Pandora's interpretation of the law.  The first is the contract between Pandora and its listeners.  Those terms of service make clear that listeners have only a license to listen to music and can make no other uses of the music.  Sterry Dec., Ex. A-I.  The second is the only body of law that defines what it means to stream music over the Internet – Copyright law.  The difference between broadcasting a song (digitally or the old-fashioned way) and the sale or rental of a sound recording has been addressed in copyright cases.  In those cases, the question here has been asked and answered – streaming music is a performance and not a loan, or rental – and there is no basis for this court to conclude otherwise.

As pointed out in Pandora's moving papers, Deacon has failed to allege adequately other required elements of his claims, such as standing and injury.  These arguments become relevant only if Pandora "sells," "rents" or "lends" music, which it does not.  To the extent, however, that Deacon can get past this threshold inquiry, his conclusory complaint is insufficient.  Deacon alleges only hypothetical harms that other users might have suffered.  Not personal, concrete harm to him.  This failure is an independent ground for dismissal.

Likewise, Deacon's MCPA claims should be dismissed because he relies only on claims for injunctive relief that – by his own allegations – are moot.  Because his complaint makes clear that the alleged problem has been remedied, his case for injunctive relief cannot continue.  In addition, his allegations of reliance are insufficient, because they show that any misstatements or omissions in Pandora's disclosures were not material.

Pandora does not "sell," "rent," or "lend" music.  Deacon seeks to ignore the plain language of the VRPA, Pandora's own terms of service, and relevant copyright cases to subject a new, innovative form of music broadcasting to a decades-old statute that was never intended to apply to music broadcasting.  Deacon's invitation to create a conflict between federal copyright law and Michigan state law regarding the characterization of the very same conduct should be rejected.  Pandora is not subject to the VRPA, nor has it violated the MCPA.  Deacon's claims should be dismissed with prejudice.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     ARGUMENT

### A.     The VRPA Does Not Apply to Internet Radio Stations Like Pandora Regardless of How they Broadcast Music

#### 1.     Creating a Copy of a Digital Audio File to Facilitate Playback is Not Renting, Selling, or Lending a Sound Recording

On the critical issue of "selling," "renting" or "lending," Plaintiff's allegations, of which there are only two, are conclusory and therefore must be disregarded.  First, Plaintiff alleges that "Pandora is 'engaged in the business of selling, . . . renting or lending . . .' because it maintains an online library of sound records and rents, sells, and/or lends digital sound recording  . . . through its online service."  Compl. ¶ 19.  This is nothing more than a regurgitation of the statutory language, and it is settled that simply reciting statutory language does not satisfy *Twombly*.  Second, Plaintiff alleges that Pandora "allows the user to temporarily store a digital copy of the song . . . on their computer."  Compl. ¶ 20.  This, however, is also conclusory because Plaintiff includes no additional facts establishing that the Pandora allows a user to temporarily "store" a song on his or her computer.

Deacon insists that he can survive Pandora's motion to dismiss because he alleged that Pandora allows users "*to borrow digital sound recordings for the duration of the song*."  Opp. at 13 (quoting Compl. ¶¶ 2, 19).  This allegation is not only conclusory, it makes no sense.  It is tantamount to characterizing an invited dinner guest as someone who has "*leased my dining room for the duration of the meal*."  In reality, neither the diner nor the listener is a lessee.  This Court can reject Deacon's similarly ridiculous characterization of Pandora's business on a motion to dismiss.  Such "characterizations in a complaint do not preclude disposal of a case on a motion to dismiss merely because they are cast in the form of factual allegations, as such conclusions or characterizations are not entitled to a presumption of truthfulness."  *Lara v. Cowan*, 848 F. Supp. 1456, 1457 (D. Ariz. 1994 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981));  *see also San Francisco Tech., Inc. v. McNeil PPC, Inc.*, No. 10-cv-03249-JF/PSG, 2011 WL 941261 at *1 (N.D. Cal. March 18, 2011 (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) ( "a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact…")

3

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*

Deacon's own allegations contradict the theory set forth in his opposition.  Such conclusory characterizations are entitled to even less weight when contradicted by other allegations in the complaint, which demonstrate no such "borrowing" occurs.  *See, e.g., McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) ("if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court."); *see also Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (same).  In the paragraph immediately following Deacon's allegation that Pandora "temporarily" stores a "digital copy of the song *currently playing on their computer*," he acknowledges that "*Pandora removes the track* from the user's computer."  Compl. ¶ 20 (emphasis added).  There is no allegation in the complaint that a "digital copy" is sold, rented, or lent in any ordinary sense of the term.  Instead, the complaint makes clear that Pandora makes an ephemeral copy of a digital audio file and stores it on the user's computer only to facilitate playback on Pandora's service, and then Pandora removes the file.[2]

Deacon does not really deny this, but argues instead that discovery is required to ascertain how the service works.  Opp. at 17-18.  He speculates that "discovery *may* ultimately show that Pandora transmits full copies of songs, that the songs are not actually deleted from the customer's computers until the program is closed," or that customers can "permanently store the files, and otherwise make use of or enjoy the recordings at their temporary disposal."  Opp. at 17-18.[3] These are conjectural possibilities, not alleged in the complaint,[4] they are flatly contradicted by Pandora's terms of service, and they skirt the key question: whether Pandora is "*engaged in the business of* selling at retail, renting, or lending books or other written materials, sound recordings,

---

[2] In order to make digital music transmissions, webcasters such as Pandora require a license to make "ephemeral copies" of the work.  *See* 17 U.S.C. § 112(e).  An ephemeral copy is a temporary copy of the recording made in connection with the digital transmission process.

[3] To continue with the dinner guest analogy, the fact an invited dinner guest can find a way to smuggle some leftovers off his plate (despite having promised he would not do so) does not mean that the homeowner is *engaged in the business* of offering take-out.

[4] *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir.2005) ("[C]ourts, when ruling on a motion to dismiss, must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint.")

4

or video recordings." M.C.L. § 445.1713. Regardless of whether technologically savvy users can figure out how to manipulate the stream, Pandora is engaged only in the business of webcasting internet radio.

### 2. Pandora's License to Users Makes Clear they Do Not Rent, Lend, or Sell Sound Recordings

Deacon argues that discovery is necessary to ferret out what a user may do with a sound recording obtained by Pandora. This is false. To the extent Deacon has raised any issue here it is resolved definitively by Pandora's Terms of Service. There is thus no reason to require the parties to engage in costly discovery that will have no impact on resolution of the case. Deacon has not asserted a viable claim, and the Complaint must be dismissed.

This result is confirmed by the common-sense interpretation of "lend." Deacon agrees that "lend" is defined as "to put at another's temporary disposal." *See,* Opp. at 6:19-21; 7: 4-7 (". . . sound recordings are placed at the customers' 'temporary disposal' so as to be considered lent . . . ."). But, Pandora's terms of service make it clear that it does not provide customers with music to use at their "disposal." The most logical place to look to determine what rights Pandora users are getting, and therefore what business Pandora is engaged in, is its agreement with its listeners. *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011) (finding that a user agreement governs what ownership a user has in software and interpreting the scope of that agreement under federal copyright law). A Pandora user's rights in the music Pandora streams are subject to the license set forth in Pandora's terms of service. Sterry Decl., Exs. A-I. Those terms of service provide that any ephemeral data sent to a user's computer is licensed only to facilitate contemporaneous playback, and is not rented, sold, or lent to a user. Sterry Decl. Exs. A-I, each at ¶¶ 2, 3, 4. The terms of service clearly preclude all "use" of the songs with the exception of listening to the song the one time it is played: users "may not copy, store, edit, change, prepare any derivative work of or alter in any way any of the tracks streamed . . . ." Opp. at 9:7-10. Further, the terms provide in plain, clear language that "You can't use Pandora to steal music, and you have to listen to it through pandora.com or on a device officially supported by

Pandora." *Id.*, each at 1.  Therefore, regardless of whether Plaintiff's conclusory allegation that Pandora allows temporary "storage" of a track is true, it does not make Pandora a "lender."

Thus, users do not rent or buy songs from Pandora.  They receive only a limited license to listen to digital performances of songs through Pandora.  Any users' unlicensed use of Pandora would therefore be piracy, not a sale, rental, or loan.[5]  Because Pandora's terms of service provide only a license to listen to music, and make clear that its users are not renters or borrowers, Deacon's VRPA claim must be dismissed.

### 3.  The VRPA Should Be Construed As Consistent With Copyright Law

Pandora does not contend that the Copyright Act preempts privacy claims.  Instead, Pandora argues that copyright law is instructive in (and in fact, is the best source aside from the contract) determining whether Pandora's business involves renting, lending or selling a sound recording. Nowhere in his brief does Deacon justify interpreting the VRPA's terms — *i.e.* sale, rental or loan — differently from the way they are defined under copyright law.  Nor is there any indication that Michigan intended to do so.

To the extent the VRPA does not clearly exclude Pandora's conduct, reliance on copyright law is appropriate.  While Michigan courts must concern themselves with the intent of the Michigan legislature, they also recognize that interpretations of similar federal statutes "provide highly persuasive, although not binding, authority."  *Dana v. Am. Youth Found.*, 668 N.W.2d 174, 179 (Mich. Ct. App. 2003).  Even if there were some guidance from Michigan, state law cannons of contractual construction are relevant, "but only to the extent such rules do not interfere with federal copyright law or policy."  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989).  Copyright law is thus the most relevant source for determining whether a new technology constitutes lending, selling, or renting of sound recordings, given the absence of VRPA cases.

---

[5] If class members engaged in such activities, they could be subject to a counterclaim for copyright infringement.  *See, e.g., MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 2010) *as amended on denial of reh'g* (Feb. 17, 2011) (holding a licensee's breach of a license can constitute copyright infringement when there is a nexus between the breach and licensor's exclusive rights.)  Violation of those terms would be a breach of contract, and under the Ninth Circuit's holding in *MDY*, may constitute infringement.

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*

The Digital Performance Right in Sound Recordings Act ("DPRA") confirms Pandora's position that the service it provides is streaming and nothing more.  Courts have recognized that under the copyright laws that the ephemeral copy made solely to facilitate playback does transform audio streaming from a "public performance" into renting, lending, or selling a sound recording.  *United States v. Am. Soc. of Composers, Authors, Publishers*, ("*ASCAP*") 627 F.3d 64, 74 (2d Cir. 2010) *cert. denied,*132 S. Ct. 366 (2011) (construing § 2 of the DPRA, codified at 17 U.S.C. § 106).  Deacon unsuccessfully attempts to distinguish *ASCAP*, claiming that Pandora employs a different method for selecting which song to play than the streaming service in that case.  Deacon fails, however, to demonstrate that those factual differences compel a different result here.  On the contrary, Deacon concedes that the temporary copy of the recording that is made in connection with the digital transmission process is removed when the song is completed.  Thus, in the words of the *ASCAP* court, the transmission "is a performance because there is a playing of the song that is perceived simultaneously with the transmission."  *Id.*

Deacon's interpretation of the VRPA would conflict with the Copyright Act because it would transform what is plainly a "public performance" for purposes of federal copyright law into a "rental, lease or lending" under state law.  *See, e.g.*, 17 U.S.C. § 114(d)(2).  Indeed, Deacon's interpretation of the state law could put Pandora in violation of the federal copyright laws. 17 U.S.C. §§ 106 & 114(d)(2).  This result is inapposite.  *See, e.g., ASCAP,* 627 F.3d at 74; *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485 (3d Cir. 2003).  The Court should not break new ground here.  Deacon's VRPA claims should be dismissed.

**B.  Deacon Has Not Stated a Claim Under the MCPA**

**1.  Deacon's Boilerplate Request for Injunctive Relief is Not Sufficient to Bring a Claim Under the MCPA.**

As Deacon acknowledges, the MCPA authorizes injunctive relief, but only where "a person is engaging in or is about to engage in a method, act or practice which is unlawful under the MCPA."  Opp. at 22 (quoting *Van Eman v. Cars Prot. Plus*, No. 267473, 2007 WL 1491814 at *7 (Mich. Ct. App. May 22, 2007)).  Moreover, the MCPA requires allegations of "a real and

7

imminent danger of irreparable injury must exist to support a grant of injunctive relief." *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. Ct. App. 1999). Plaintiff's complaint, however, targets only past conduct and does not allege any facts showing the existence of imminent danger or irreparable injury.

Plaintiff's arguments to the contrary are belied by his own allegations. Plaintiff alleges that Pandora no longer engages in the alleged practices that gave rise to plaintiff's complaint, because Pandora has provided users with options to control what profile data they share. Compl. ¶ 28. The complaint also makes clear that in August 2010, Pandora provided the very disclosure that Plaintiff alleges was missing. *Id.* Furthermore, in criticizing Pandora's past practices, the complaint cites an article which also details Pandora's implementation of a robust consent process for data sharing – the process that Plaintiff here attempts to allege is missing. Compl. ¶ 24 (*citing* Justin Brookman, *Closing Pandora's Box*, *available at* http://www.cdt.org/blogs/justin-brookman/closing-pandora's-box (last visited January 24, 2012)).[6] And, as the Complaint alleges, Pandora's current practices and Privacy Policy allow Plaintiff to make his profile "private." Thus, Plaintiff's claims of ongoing, inadequate disclosure are moot. Opp., p. 16 (*citing* Sterry Dec., Ex. O at 4.)[7] Several sections of the complaint reference an "injunction requiring Pandora to cease its unlawful conduct," but they provide no detail regarding the allegedly ongoing conduct. *See, e.g.*, Compl. ¶ 55. This is not enough to satisfy *Twombly*.

Even if Deacon could get away with this conclusory pleading, he cannot get past the fact that he has utterly failed to allege facts sufficient to establish Article III standing. Article III is satisfied by a four-prong showing: (1) Deacon is under threat of suffering 'injury in fact' that is

---

[6] As *Closing Pandora's Box* states "Pandora has responded to this criticism with a great tool to put its users in charge of their privacy. Now, when Pandora users return to the site, they are shown a box that asks them whether they want their profile to be 'public' or 'private.' Users have to pick one or the other — they can't just close the box to return to the default of public sharing. The box also contains links to give users the chance to learn more about sharing works."

[7] If Deacon had protected his own account in this way, it would further support a finding that he lacks standing to seek injunctive relief.

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*

concrete and particularized; (2) the threat is actual and imminent, not conjectural or hypothetical; (3) the threatened harm is fairly traceable to the challenged action of the defendant; and (4) a favorable judicial decision will likely prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Deacon has not alleged any facts to satisfy any of these prongs. Deacon's opposition ignores the fact that even if he somehow has Article III standing to assert claims under the VRPA based on an alleged violation of a statutory right, he does not have Article III standing under the MCPA. Unlike the VRPA, the MCPA contains no provision that could support standing based on a violation of a statutory right. And Article III does not provide plaintiffs with standing to seek injunctive relief unless they have alleged a threat of imminent harm. As such, Deacon's claims of injunctive relief are insufficient to state a claim under the MCPA, or for standing under Article III.

### 2.   Plaintiff Failed to Address Materiality.

Deacon simply avoids the issue of materiality by ignoring the impact of Pandora's subsequent information-sharing disclosures. Plaintiff fails to distinguish *Leong v. Square Enix of Am. Holdings, Inc.*, CV 09-4484 PSG (VBKx), 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) *aff'd* 2011 WL 6364705 (9th Cir. Dec. 20, 2011), which held clearly that consent to a user agreement defeats materiality when the objected-to practice is disclosed therein. Deacon does not allege that he objected to Pandora's privacy policies at any time nor that he stopped using the service after additional disclosures were made.[8] This establishes that Deacon really did not find the information sharing to be material to his decision to continue to use the service In any event, Deacon does not, as he argues in opposition, plead actual reliance because he nowhere alleges that he would have acted differently had Pandora made its August 2010 disclosure in April 2010. Opp. at 23; s*ee* Compl. ¶ 54 (alterations and quotations omitted)).

---

[8] Deacon's pleadings are again deficient, as they do not allege that Deacon still uses Pandora. If he does, then Pandora's policies regarding sharing were not material to his decision to use Pandora. If he does not, then it is an additional reason he lacks standing to seek injunctive relief.

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*

### 3.   Pandora is a Regulated Industry, Rendering the MCPA Inapplicable

Deacon misstates the scope of the "authorized" exception to the MCPA, and fails to recognize that both *Smith v. Globe Life Ins. Co*, 597 N.W.2d 28 (Mich. 1999) and *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007) reject his narrow reading of *Attorney General v. Diamond Mortgage Co*, 327 N.W.2d 805, 811 (Mich. 1982).  As the *Liss* court explained, Courts must "focus is on whether the transaction at issue, not the alleged misconduct, is 'specifically authorized.'"  *Liss* at 518, *quoting Smith*, 597 N.W.2d at 38.  Indeed, as the *Liss* court went on to explain, "In *Smith,* the defendant was licensed to sell insurance, and the case concerned insurance.  Thus, the exception applied."  *Liss* at 518 n. 23.  Here, Pandora is licensed to stream music to internet listeners, and this case concerns Pandora's actions in streaming music to internet listeners.

Instead of looking at whether the precise conduct at issue is regulated, the relevant inquiry is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."  *Liss*, 732 N.W.2d at 518.  The Copyright Act authorizes the general transaction Pandora engages in when it streams music, much like Michigan law expressly authorizes selling insurance or building a house.  Like home building and insurance regulations, the DPRA provides a detailed statutory scheme covering streaming music to consumers.  As such, the "general transaction" of streaming music—like the building of a home in *Liss*—is authorized and MCPA does not apply.

Deacon's reliance on *Wong v. T-Mobile USA, Inc.*, No. 05-73922, 2006 WL 2042512 (E.D. Mich. July 20, 2006) does not alter the result.  At issue in *Wong* was whether the FCC's regulation of cellular providers rendered the MCPA inapplicable in a contract dispute between T-Mobile and its customers.  In holding that it did not, the court relied on the fact that the FCC "expressly reserves to the states the ability to regulate 'terms and conditions of commercial mobile services' other than their rates.  47 U.S.C. § 332(c)(3)(A)"  *Id.* at *9 (quoting *In re Conn. Mobilecom, Inc.*, 2003 WL 23021959, at *15-16 (S.D.N.Y. Dec. 23, 2003)).  The DPRA contains no such express carve out.  Instead, it covers the transaction at issue—the relationship between a

listener and Pandora when it streams music.

**C.  The Opposition Confirms That Deacon Himself Has Suffered No Injury.**

Deacon responds to Pandora's argument regarding lack of injury by pointing to the allegations of the complaint the provisions of the complaint that deal generically with user information.  This does not satisfy the injury requirement.  Deacon fails to allege that he suffered any injury caused by disclosure.  Instead, the Complaint makes clear that Deacon learned of Pandora's practices only through press reports.  Compl. ¶¶ 24 n. 2, 25 n. 3.  It is perhaps for this reason that Deacon's allegations remain focused on anonymous "users" and the faceless "public," and not on harm to Deacon.[9]  Such allegations do not allege sufficient injury in fact to state a claim to satisfy Article III's standing requirement, or to state a claim under the MCPA or VRPA.

In its motion, Pandora pointed out the complaint's unanswered questions: Did Deacon use Pandora to listen to music?  What information did he provide?  What information about his listening history was disclosed?  Who was it disclosed to?  Deacon's response, which cites only paragraphs 43-46 of the complaint, provides no insight on these questions.  Opp. at 14.[10]  As courts in this district have held, to have standing, plaintiffs must "allege concrete, particularized injuries in fact to *themselves,* as opposed to 'consumers' in general," *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).  In *iPhone*, the

---

[9] One reason particularity is crucial here is that Deacon's allegations against Pandora are demonstrably false.  Pandora has never disclosed information about what songs a user has merely *heard to* any other user, much less the public. Instead, a user must take some action, such as "liking" a song, to cause information to be posted to their profile.  At this stage, however, Pandora and the Court must accept the well-pled facts as true.  But Deacon's allegations are not well-pled due to the lack of particularity about exactly what was shared.  If the court requires Deacon to plead with particularity what was disclosed, it will find it out the true nature of the claim in this case - that Pandora made available information that it received from Deacon, and did not disclose songs that Deacon passively heard.  Although Deacon claims that the statute covers information related to songs he has heard, he has deliberately avoided coming clean with regard to what concrete information about his interests Pandora actually shared.

[10] Nor has Deacon alleged whether unknown members of the public actually viewed his "protected information."  The VRPA states that a party "shall not disclose … a record or information concerning the purchase, lease, rental, or borrowing" of sound recordings.  M.C.L. § 445.1712.  It does not prohibit "offering for disclosure"—only *actual disclosure*.  *Cf.* M.C.L. § 750.224 (providing a person may not sell, *or offer for sale*, an illegal firearm).

11

court dismissed privacy claims based on disclosures of personal information in connection with the use of Apple's "iDevices," because "Plaintiffs do not identify what iDevices they used, do not identify which Defendant (if any) accessed or tracked their personal information, do not identify which apps they downloaded that access/track their personal information, and do not identify what harm (if any) resulted from the access or tracking of their personal information. *Id* at 4. Deacon's complaint omits similar details and likewise addresses only unknown "users" or "consumers in general," and likewise should be dismissed.

 Deacon is also similar to the plaintiffs who have brought actions based on *speculation* that some harm could occur because some unknown actor could have gained access to their personal information.  *See iPhone*, 2011 WL 4403963 at *6 (holding that conjectural or speculative allegations about the risk of harm do not suffice for purposes of Article III standing); *see also Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 at *1 (S.D.N.Y. June 25, 2010) (collecting cases asserting claims based on the possible disclosure of personal information as a result of security breaches and noting that "While there is a split in authority as to how to analyze these cases, every court to do so has ultimately dismissed" each case.)

Similarly, Deacon's claim that "emotional distress" can be readily inferred from the complaint strains credulity.  Opp. 19.  As in *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011), the complaint provides no detail regarding any individual that *actually* saw Deacon's allegedly 'Protected Information', what embarrassing details his listening history may have revealed, or how he was emotionally harmed by its disclosure.  As the *Low* court noted, the alleged "injury must affect the plaintiff in a personal and individual way." *Id.* at *3 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 (1992). This is not a case where Deacon alleged he was a frequent listener of particularly offensive music and his supervisor or coworkers found out, subjecting him to ridicule at work.  Or that he was even embarrassed by his musical tastes.  The complaint's allegations do not suffice.

In arguing no such allegations are required (Opp. 8), Deacon pretends *Twombly* never

12

1  happened.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Deacon relies on *Swierkiewicz*

2  *v. Sorema N.A.*, 534 U.S. 506, 511 (2002) for the proposition that a plaintiff need not "plead facts

3  establishing a *prima facie* case" on a motion to dismiss.  But *Twombly* makes clear that the

4  standard articulated in *Swierkiewicz* has been heightened.  *Twombly*, 550 U.S. at 563 (holding that

5  *Swierkiewicz*, 534 U.S. at 514 applied a standard that has "earned its retirement."); *see also*

6  *Sablan v. A.B. Won Pat Int'l Airport Auth., Guam*, CIV. 10-00013, 2010 WL 5148202 (D. Guam

7  Dec. 9, 2010) (holding that "after *Twombly* and *Iqbal,* an employment discrimination plaintiff

8  must get closer to alleging a *prima facie* case than was necessary a few years ago.")  In any event,

9  Pandora's motion does not call for a "heightened fact pleading of specifics" regarding how users

10  may interact with Pandora's audio stream, but merely "enough facts to state a claim that relief is

11  plausible on its face."  *Id.* at 570.  Here, Pandora is not a record store and Deacon has suffered no

12  identified harm.  Accordingly, discovery is not called for, and this case should be dismissed with

13  prejudice.

14

Dated:       January 25, 2012          Signature: ___*/s/*Marc J. Zwillinger_____

15                                         Marc Zwillinger (*pro hac vice*)
16                                         marc@zwillgen.com
                                           ZWILLGEN PLLC
17                                         1705 N Street, NW
                                           Washington, D.C.  20036
18                                         Tel: (202) 296-3585 (main)

19                                         Michele D. Floyd (SBN 163031)
20                                         michele.floyd@klgates.com
                                           K&L GATES LLP
21                                         630 Hansen Way
                                           Palo Alto, CA 94304
22                                         Tel: (650) 798-6755
                                           Facsimile: (650) 798-6701
23

24                                         *Attorneys for Defendant, Pandora Media, Inc.*

25

26

27

28

Case No. 11-CV-4674 SBA
*DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS*