# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PETER DEACON, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>PANDORA MEDIA, INC., a Delaware corporation,<br><br>　　　　　Defendant. | Case No: C 11-04674 SBA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket 20 |

Plaintiff Peter Deacon ("Plaintiff") brings the instant putative action on behalf of himself and other residents of Michigan who use the internet radio services of Defendant Pandora Media, Inc. ("Pandora"). He alleges that Pandora improperly disclosed his "private" music preferences and other information to the public and his Facebook "friends" in violation of Michigan's Video Rental Privacy Act ("VRPA"), Michigan Compiled Laws ("MCL") § 445.1712, and the Michigan Consumer Protection Act ("MCPA"), MCL § 445.903. Plaintiff alleges subject matter jurisdiction based on diversity. See 28 U.S.C. § 1332. Venue is proper, as Pandora resides in this District. See id. § 1391(b)(1).

The parties are presently before the Court on Defendant Pandora's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 20. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to dismiss with leave to amend, for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

Pandora operates an internet radio service through its website located at www.pandora.com. Compl. ¶¶ 2-4, Dkt. 1. Pandora's service allows its subscribers to create their own, customized "radio stations" based on the subscriber's selected preferences. Id. ¶ 3. For instance, a subscriber may enter the name of a particular artist or song, which Pandora then uses to create a station based on artists or songs with similar attributes. Id. ¶ 3.[1] The songs selected by Pandora are then streamed to the subscriber's computer. Id. Pandora claims that its technology utilizes the "intrinsic qualities of music to initially create stations and then adapts playlists in real-time based on the individual feedback of each listener." Id. ¶ 4 n.1. Use of Pandora is free, though a premium version of Pandora service without advertisements is available for a fee. See Def.'s Mot. at 2 n.3, Dkt. 30; Pandora Form S-1 Reg. Stmt. ("S-1 Reg. Stmt.") at 46 (filed Feb. 1, 2011 (http://www.sec.gov/Archives/edgar/data/1230276/000119312511032963/ds1.htm#toc119636_10, last accessed Aug. 28, 2012).

To facilitate the streaming process, Pandora "temporarily store[s] a digital copy of the song" on the subscriber's computer. Id. ¶ 20. The file remains on the subscriber's computer until the song has finished playing, at which time it is automatically deleted by Pandora. Id. Pandora's Terms of Use, with which all subscribers must abide as a condition to use Pandora's service, make clear that subscribers do not have any ownership rights to the music Pandora streams for playback and that they cannot download any of the songs. Id. ¶¶ 24, 31. In particular, section 3.2 of Pandora's Terms of Service specifies that subscribers shall not "copy, store, edit, change, prepare any derivative work of or alter in any way any of the tracks streamed through the Pandora Services," while section 3.1

---

[1] "A stream is an electronic transmission that renders the musical work audible as it is received by the client-computer's temporary memory. This transmission, like a television or radio broadcast, is a performance because there is a playing of the song that is perceived simultaneously with the transmission." United States v. Am. Soc. of Composers, Authors, Publishers, 627 F.3d 64, 74 (2d Cir. 2010) ("ASCAP").

prohibits subscribers from "reproduc[ing] copyrighted materials." Sterry Decl. Exs. A-I ("Terms of Service"), Dkt. 20-1. In addition, songs cannot be purchased from Pandora, though Pandora provides links to Apple's iTunes service and/or Amazon.com where subscribers may purchase the song being played from those vendors. Compl. ¶ 21.

When subscribers sign up for a Pandora account, a "Personal Page" is automatically created for them. Id. ¶ 23. The page contains the subscriber's full name, profile information, recent "station," recent activity, listening history, bookmarked tracks and bookmarked artists (collectively "Protected Information"). Id. Although Pandora claims that Protected Information is available only to other registered Pandora subscribers with knowledge of the particular subscriber's unique email address, such information allegedly is "publically available and searchable on the World Wide Web for anyone to view." Id. ¶ 6. In addition, on April 21, 2010, Pandora unilaterally integrated its subscribers' profile pages with their Facebook accounts. Id. ¶ 7. As a result, a Pandora subscriber's Facebook "friends" allegedly are now able to access "sensitive listening records" and "musical preferences" from the Pandora subscriber's profile. Id.

### B. PROCEDURAL HISTORY

Plaintiff commenced the instant putative class action in this Court on September 20, 2011. The Complaint asserts two causes of action. First, Plaintiff alleges that the disclosure of subscribers' Protected Information to other Pandora and non-Pandora subscribers violates the VRPA. See Compl. ¶¶ 44-46. Second, Plaintiff contends that Pandora has violated the MCPA by disclosing his Protected Information to his Facebook contacts. See id. ¶ 52-54. Plaintiff purports to bring both claims on behalf of the following Class and Subclass:

> **The Disclosure Class**: A class consisting of all Michigan residents who registered as users or subscribers of Pandora's services before August 5, 2010.
>
> **The Facebook Disclosure Subclass**: A subclass consisting of all Michigan residents whose Pandora account was automatically integrated with a Facebook account before August 5, 2010.

1  Id. ¶ 35.  As relief, Plaintiff seeks statutory damages under the VRPA in the amount of
2  $5,000 per class member.  Id. ¶¶ 9, 48.  With respect to his claim under the MCPA,
3  Plaintiff seeks "an injunction requiring Pandora to cease its unlawful conduct."  Id. ¶ 55.
4        In response to the Complaint, Pandora now moves to dismiss Plaintiff's claims
5  under Rule 12(b)(6).  Dkt. 20.  Pandora first contends that Plaintiff has failed to allege facts
6  showing that he suffered an injury-in-fact, and hence, subject matter jurisdiction is lacking.[2]
7  With regard to the sufficiency of the claims, Pandora argues that Plaintiff's claim under the
8  VRPA should be dismissed for failure to establish that it is engaged in the business of
9  "selling at retail, renting, or lending . . . sound recordings[.]"  MCL § 445.1712.  Likewise,
10 Pandora contends that Plaintiff has failed to state a claim under the MCPA on the grounds
11 that its conduct is authorized by law, and that Plaintiff has failed to demonstrate that he has
12 prudential standing to sue for injunctive relief on a class basis.  Plaintiff and Defendant
13 filed an opposition and a reply, respectively.  Dkt 26, 30.  The matter has been fully briefed
14 and is ripe for adjudication.[3]

## II. LEGAL STANDARD

### A. RULE 12(B)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  In a "facial" challenge, the court assumes the truth of plaintiff's factual allegations and draws all reasonable

---

[2] Though acknowledged by neither party, dismissal for lack of subject matter jurisdiction is governed by Rule 12(b)(1), not Rule 12(b)(6).

[3] The Court granted Pandora leave to file an oversized brief.  Dkt. 21.  Plaintiff has correspondingly submitted requests for leave to file an oversized opposition and an extension of time to file its opposition.  Both requests are unopposed and are hereby granted.  Dkt. 25, 27.  In the future, however, the parties should strive to present their arguments in a more concise manner so as to avoid the submission of oversized briefs.  See Fleming v. County of Kane, State of Ill., 855 F.2d 496, 497 (7th Cir. 1988) ("Overly long briefs, however, may actually hurt a party's case, making it far more likely that meritorious arguments will be lost amid the mass of detail.") (quoting in part United States v. Keplinger, 776 F.2d 678, 683 (7th Cir. 1985)).

inferences in its favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case of a "speaking" motion, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

  **B.** **RULE 12(B)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Where a complaint or claim is dismissed, leave to amend

- 5 -

generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).

## III. DISCUSSION

### A. VRPA

#### 1. Standing

It is axiomatic that standing under Article III of the United States Constitution is a threshold requirement in every civil action filed in federal court. U.S. Const., art. III, § 2, cl. 1; Elk Grove Unified Sch. Dist. v. Newdow, 524 U.S. 1, 11 (2004). To satisfy the requirements of Article III, there must be the "irreducible constitutional minimum" of an injury-in-fact. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." Id. (internal citations and quotation marks omitted). "The injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Edwards v. First Am. Corp., 610 F.3d 514, 517 (9th Cir. 2010) (internal quotations and citations omitted). In such cases, the "standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." Id. (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). As a result, a court must look to the text of the statute at issue to determine whether it prohibits the defendant's conduct; if so, "then Plaintiff has demonstrated an injury sufficient to satisfy Article III." Id.

The VRPA provides that "a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending . . . sound recordings . . . *shall not disclose* to any person, other than the customer, *a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer*." MCL § 445.1712 (emphasis added). The customer identified in the information disclosed in violation of the Act "may bring a civil action against the person and may recover both of the following: [¶] (a) Actual damages, including damages

- 6 -

for emotional distress, or $5,000.00, whichever is greater; [¶] (b) Costs and reasonable attorney fees." Id. § 445.1715. Violation of the VRPA also constitutes a misdemeanor. Id. § 445.1714.

Pandora contends that Plaintiff has failed to allege an "actual injury" traceable to its conduct. Def.'s Mot. at 13. As an initial matter, the VRPA does not explicitly impose an actual injury requirement. Rather, the statute's civil remedy provision allows for recovery based on a showing of actual damages *or* statutory damages. MCL § 445.1715. Though there is no decisional authority interpreting the VRPA, the Ninth Circuit has recognized that, in order to deter the prohibited conduct, a statute may allow for the imposition of statutory damages without a showing of actual damages. See Bateman v. American Multi-Cinema, Inc., 623 F.3d 708, 718 (9th Cir. 2010) (discussing the Fair and Accurate Credit Transactions Act, which limits the disclosure of a consumer's credit card number). That aside, Plaintiff has sufficiently alleged the disclosure of information governed by the VRPA. Plaintiff alleges that Pandora disclosed his name and "listening history," i.e., a list of the songs he listened to on Pandora's radio service, to the general public. Compl. ¶¶ 6, 23, 43, 45. Assuming arguendo that those songs are deemed to have been sold, rented or lent to the subscriber (which is discussed below), the disclosure of this information is sufficient to constitute an injury for purposes of Article III standing. See Jewel v. National Sec. Agency, 673 F.3d 902, 908-911 (9th Cir. 2011) (finding defendant's violation of the Electronic Communications Privacy Act and Stored Communications Act to be a concrete and particularized injury).

### 2. Sufficiency of Allegations

More problematic for Plaintiff is whether he has alleged facts sufficient to state a claim under the VRPA. By its own terms, the VRPA only applies to "the business of selling at retail, renting, or lending . . . sound recordings . . . ." MCL § 445.1712. Plaintiff's allegations of "renting" and "lending" are set forth in paragraph 20 of the Complaint, which alleges as follows:

- 7 -

> [W]hen an individual listens to music through Pandora, Defendant allows the user to temporarily store a digital copy of the song currently playing on their computer. Upon completion of the track, Pandora removes the track from the user's computer. In this way, Pandora "lends" and/or "rents" the song to the user.

Compl. ¶ 20. Pandora argues that it merely streamed music to Plaintiff's computer, and therefore, could not have violated the VRPA because it never rented, lent or sold sound recordings to him. The Court agrees.

### a) Renting

Turning first to the issue of "renting," the Court notes such term is not defined by the statute. In the absence of a statutory definition, courts "look to the plain meaning" of the disputed terms. Friends of Yosemite Valley v. Norton, 348 F.3d 789, 796 (9th Cir. 2003). "[C]ourts routinely rely on dictionary definitions" to ascertain a term's plain meaning. United States v. Havelock, 664 F.3d. 1284, 1293 (9th Cir. 2012). Black's Law Dictionary defines "rent" as "consideration paid [usually] periodically for *use* . . . of property." Black's Law Dictionary 1410 (9th ed. 2004) (emphasis added). In turn, the term "use" means "to put into action or service." Merriam-Webster's Collegiate Dictionary 1378 (11th ed. 2005). "In ordinary, contemporary, and common parlance, the 'use' of something requires a *volitional act*." United States v. Trinidad-Aquino, 259 F.3d 1140, 1145 & n.2 (9th Cir. 2001) (emphasis added). In other words, "use" requires "some volition to perform the act," as opposed to passive activity. Id.

The Court finds that Plaintiff's allegations are insufficient to establish that Pandora "rents" sound recordings to its subscribers. As an initial matter, no facts are alleged showing that Plaintiff paid any consideration to Pandora in exchange for use of its service.[4] More fundamentally, Plaintiff has not alleged any facts showing his "use" of Pandora's property; that is, a volitional act relating to the temporary song file supplied by Pandora.

---

[4] Pandora generally provides its service without charge. See Pandora Form S-1 Reg. Stmt. at 46. There is a charge for Pandora's premium service, but Plaintiff does not allege that he subscribed to or paid for such the premium service.

- 8 -

As discussed, Pandora is an internet radio service that streams music to the subscriber's computer. Compl. ¶¶ 2-3. The actual songs played by Pandora are selected by Pandora, *not* the subscriber. Id.; see also S-1 Reg. Stmt. at 1-3. The temporary song file used to facilitate the streaming process is controlled at all times by Pandora; Pandora places the file on the subscriber's computer and Pandora deletes the file when the song is over. See Compl. ¶ 20. There are no allegations that the subscriber engages in any volitional activity with respect to the temporary file, which exists solely to facilitate the streaming process so that the subscriber can listen to the song.

In his opposition, Plaintiff claims that his allegation that "Pandora allows users to borrow digital sound recordings for the duration of the song(s)," Compl. ¶ 2, is sufficient to show that subscribers "rent" songs from Pandora. See Pl.'s Opp'n at 7. However, "borrow" means "to receive with the implied or expressed intention of *returning the same* or an equivalent." Merriam-Webster's Collegiate Dictionary 144 (11th ed. 2005) (emphasis added). Here, the song file is never returned because, according to Plaintiff, Pandora deletes the file upon completion of the song. See Compl. ¶ 20. Moreover, merely alleging that subscribers "borrow" sound recordings does not suffice to identify the particular conduct the subscriber undertakes to *use* the file. See Iqbal, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff also fails to confront the fact that Pandora's Terms of Use, which govern a subscriber's use of the Pandora internet radio service,[5] foreclose any borrowing or use of any temporary song file supplied by Pandora. C.f. Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1159 (9th Cir. 2011) (holding that licensing agreement controlled the scope of the user's rights in the software). In particular, the Terms of Use plainly state that subscribers shall not "copy, store, edit, change, prepare any derivative work of or alter in any way any

---

[5] The Terms of Use state that use of the Pandora's website and its service is conditioned upon the subscriber's compliance with the Terms of Use. In addition, the subscriber is advised that "[y]our use of Pandora means you agree to the Terms of Use." TOU at 1-2.

of the tracks streamed through the Pandora Services[.]" TOU § 3.2.  Further, subscribers are instructed that, "You can't use Pandora to steal music, and *you have to listen to it through pandora.com or on a device officially supported by Pandora*." Id. at 1 (emphasis added).  Thus, Pandora's Terms of Use, which are binding on Plaintiff and all Pandora subscribers, only authorizes subscribers to listen to music—nothing else.

Plaintiff's only response is that Pandora's Terms of Service shows that "Pandora is aware that its application makes copying possible." Pl.'s Opp'n at 8 n.2.  This argument misses the mark.  The salient question is whether Pandora *rents* sounds recordings to its subscribers.  This requires Plaintiff to allege facts showing that, in exchange for consideration, Pandora provides sound recordings for a subscriber *to use*.  However, the Terms of Service make it clear that subscribers are not permitted to engage in any manipulation of the temporary file.  Thus, whether or not a subscriber theoretically could copy the file is inapposite because Pandora is not supplying the temporary file for that purpose; that is, for the subscriber to "use."  Rather, the file is used to facilitate Pandora's streaming or "public performance" of the recorded work so that the subscriber can listen to the song.

### b) *Lending*

Like "rent," the term "lend" is not defined in the VRPA.  The dictionary definition of "lend" is "[t]o allow the temporary *use* of (something) sometimes in exchange for compensation, *on the condition that the thing or its equivalent be returned*." Black's Law Dictionary 985 (9th ed. 2004) (emphasis added).  As set forth above, "use" requires a volitional act, which is not alleged in the pleadings and is otherwise foreclosed in the Terms of Use.  The only reason the song is placed temporarily on the subscriber's hard drive is to facilitate Pandora's ability to stream the song to the computer.  See ASCAP, 627 F.3d at 74.  But even if Plaintiff could show "use," he has failed to allege facts demonstrating that such use is on the condition that the file or its equivalent is "returned" to Pandora.  Rather, the pleadings allege that the song file is placed on the subscriber's hard drive for only as long as the song is being played; once the song is over, the song file is deleted from the

- 10 -

subscriber's computer by Pandora. Compl. ¶ 20. Since the song file is deleted by Pandora, there by definition can be no ability by the subscriber to "return" the file to Pandora.

### c) Sells

Plaintiff's allegations that Pandora "sells" sound recordings fare no better. The plain meaning of "sell," which is not defined by the VRPA, is "to give up (property) to another for something of value (as money)." See Merriam-Webster's Collegiate Dictionary 1129 (11th ed. 2005). However, the Complaint does not allege any facts to support the conclusion that *Pandora* "give[s] up" any property to its subscribers in exchange for money or anything of value. Rather, Pandora's website merely provides a link allowing subscribers to click through to iTunes or Amazon.com where the subscriber can purchase digital copies of the song from either of those companies. Compl. ¶ 21. As Pandora points out—and Plaintiff does not dispute—the sale is between the third party and Pandora subscriber, *not Pandora and the subscriber*. The possibility that Pandora and the third party vendors may have a profit sharing agreement is not, standing alone, is not dispositive of whether *Pandora* is selling the song to the subscriber.

But even if the presence of a purchase link were sufficient to establish Pandora as a "seller," the Complaint fails to allege that Pandora ever disclosed information regarding the purchase. As stated above, the VRPA requires a showing that Pandora both sold sound recordings *and* that it disclosed records of subscriber purchases along with the identity of the subscriber to a third party. MCL § 445.1712. Yet, the Complaint alleges only that Pandora disclosed its subscribers' "recent activities, listening histories, bookmarked tracks, and bookmarked artists," Compl. ¶¶ 23-28, and does not allege the disclosure of songs that Plaintiff or any subscribers may have purchased from iTunes or Amazon's store via the Pandora service. Notably, Plaintiffs offer no direct response to any of Pandora's arguments that it does not sell sound recordings to its subscribers. As such, Plaintiff has not sufficiently alleged that Pandora engaged in conduct proscribed by the VRPA.

### d) Copyright Law

Plaintiff's contention that Pandora rents, lends and sells sound recordings to its subscribers also is inconsistent with federal copyright law. Under the Copyright Act, *the copyright holder* has the exclusive right "to *distribute* copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending" and " to *perform* the copyrighted work publicly[.]" 17 U.S.C. § 106(3), (4) (emphasis added). Where the copyrighted work is a sound recording, the public performance right includes a performance "by means of a digital audio transmission," i.e., streaming over the internet. Id. § 106(6). Thus, for a webcaster such as Pandora to stream sound recordings, it must obtain a statutory license under 17 U.S.C. § 114. In addition, a second license is required under 17 U.S.C. § 112, which "grants the webcaster a legal right to make ephemeral (non-permanent) copies of copyright sound recordings for the sole purpose of facilitating the transmissions of those sound recordings for a fee." Intercollegiate Broadcasting Sys., Inc. v. Copyright Royalty Bd., 684 F.3d 1332, 1334 (D.C. Cir. 2012).

The right to *publicly perform* or stream a copyrighted sound recording is different from copyright holder's right to *distribute* copies of the copyrighted work to the public "by sale or . . . by rental, lease, or lending[.]" 17 U.S.C. § 106(1), (3). The right of distribution under section 106(3) is expressly subject to section 115, which allows a person who obtains a compulsory license to "make and distribute phonorecords of the work." 17 U.S.C. § 115(a)(1). Here, Pandora contends, and Plaintiff does not dispute, that it operates solely under public performance licenses, which only gives Pandora the right to broadcast copyrighted sound recordings. See Def.'s Mot. at 10; Pl.'s Opp'n at 5-8; S-1 Reg. Stmt. at 16-17. There is no allegation by Plaintiff that Pandora possesses the requisite licenses from copyright holders to distribute copies of copyrighted sounds recording by sale, rental, lease or lending to the public. See 17 U.S.C. § 106(3). It is axiomatic that Pandora cannot, without running afoul of federal copyright law, grant its subscribers the right to "use" streamed sound recordings in a manner that Pandora itself does not possess. Indeed, the only license granted by Pandora to its subscribers is a "limited, non-exclusive, non-

transferable license to access and use Pandora Services" *to listen to music streamed through its service*. TOU at 1 & § 2.1. Any other unauthorized use of Pandora's service is strictly prohibited.

Plaintiff argues that Pandora's arguments regarding the interplay between his claims and federal copyright law is tantamount to an claim that the Copyright Act preempts the VRPA. Pl.'s Opp'n at 9. According to Plaintiff, such an argument fails on the grounds that the Copyright Act "expressly carves out state privacy laws like the VRPA from its preemptive force." Id. This contention is misplaced. "Pursuant to the Supremacy Clause of the United States Constitution, federal law can preempt and displace state law through: (1) express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3) conflict preemption." Ting v. AT & T, 319 F.3d 1126, 1135 (9th Cir. 2003). Pandora, however, makes none of the arguments. Rather, Pandora's point, which Plaintiff ignores, is that Pandora only has a public performance license which only allows it to stream music over the internet. Given the limited scope of that license, Pandora contends, and Plaintiff does not dispute, that it would be incongruous to find that Pandora sells, rents or lends sound recordings to its subscribers when Pandora has no such rights to the sound recordings in the first instance.

### 3. Leave to Amend

When a claim is dismissed under Rule 12(b)(6), "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). As set forth above, Plaintiff has not alleged facts showing that Pandora rented, lent and/or sold music to him. Though it is questionable whether Plaintiff will be able to allege the requisite facts to establish a claim under the VRPA consistent with Federal Rule of Civil Procedure 11, the Court, out of an abundance of caution, will permit him an opportunity to attempt to do so. Accordingly, the Court dismisses Plaintiff's claim under the VRPA claim with leave to amend.

### B. MCPA

Plaintiff's remaining claim alleges a violation of the MCPA, which provides that "unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful . . . ." MCL § 445.903. Plaintiff alleges that Pandora engaged in deceptive methods by failing to disclose that its subscribers' Protected Information could be revealed to their Facebook friends as well as to the general public, and by falsely representing that such information would only be available to other registered Pandora subscribers. Id. ¶¶ 52-54. Pandora argues that Plaintiff's MCPA claim should be dismissed on the grounds that Pandora is exempt from liability under the MCPA's safe harbor provision, and that Plaintiff cannot maintain a class action under the MCPA absent a showing of actual damages. The Court discusses each contention in turn.

#### 1. Safe Harbor

Section 445.904 of the MCPA provides that "this act does not apply to . . . a transaction or conduct *specifically authorized* under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL § 445.904 (emphasis added). The focus of this exemption is on the "general transaction at issue," as opposed to the specific misconduct alleged. See Molosky v. Wash. Mut., Inc., 664 F.3d 109, 117-118 (6th Cir. 2011) (holding that general authorization to service real estate loans included claims regarding fees for prepayment of mortgage loans) (citing Liss v. Lewiston-Richards, Inc., 732 N.W.2d 514 (2007)). The burden of proving an exemption from the MCPA is on the party claiming the exemption. MCL § 445.904(4).

Pandora argues that it is a music streaming business which is specifically authorized by the Digital Performance Right in Sound Recordings Act of 1995, Pub.L. No. 104-39, 109 Stat. 336 ("DPRA"), and therefore, any conduct related to the streaming of music is

- 14 -

outside the purview of the MCPA. Def.'s Mot. at 18.[6] The flaw in this argument is that it ignores that Plaintiff's MCPA claim is not based on conduct relating to Pandora's streaming of music. Rather, Plaintiff is alleging that Pandora improperly disclosed Protected Information. Based on the limited scope of review on a motion to dismiss, the Court is unable to conclude at this juncture that the conduct that forms the basis of Plaintiff's MCPA claim was "specifically authorized" by the DPRA. As such, the Court rejects Pandora's assertion that it is entitled to seek the shelter of MCPA § 445.904. E.g., Am. Auto. Ass'n, Inc. v. Advanced Am. Auto Warranty Servs., No. 09-CV-12351, 2009 WL 3837234, at *4 (E.D. Mich. Nov. 16, 2009) (defendant's state authorization to sell automobile insurance and warranties did not trigger the shelter of section 445.904 where plaintiff's claims arose from defendant's registration of business and domain names).

### 2. Injury

Next, Pandora argues Plaintiff has not alleged any actual loss resulting from the purported disclosure of his Protected Information, and therefore, he cannot pursue a class action under the MCPA. Def.'s Mot. at 17-18. Plaintiff does not dispute his failure to allege that he suffered actual damages, but instead claims that he is not required by the MCPA to plead such damages where only injunctive relief is being sought. Pl.'s Opp'n at 22. As will be set forth below, a plaintiff bringing a claim under the MCPA is not required to show actual damages if he or she is seeking injunctive relief only. However, the MCPA only permits a class action to be brought where the plaintiff "suffers loss." MCL § 445.911(3)

As noted, the MCPA makes it unlawful to engage in any "unfair, unconscionable, or deceptive" practice in the "conduct of trade or commerce . . . ." MCL § 445.903. The Act

---

[6] The DPRA amended the Copyright Act of 1976 by expanding the scope of copyright protection afforded to sound recordings by including a new right for public performances of sound recordings by digital audio transmission. See 17 U.S.C. § 106(6). To resolve the confusion under the DPRA over whether webcasters were required to pay royalties for the streaming of sound recordings, Congress amended the DPRA in 1998 with the enactment of the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860 (1998).

provides for several types of civil remedies and actions, depending on the nature of the relief being sought.  First, "[w]hether or not [a person] seeks damages or has an adequate remedy at law," he or she may bring an action under the MCPA to obtain a declaratory judgment or secure an injunction, or both.  Id. § 445.911(1).  Second, "[e]xcept in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees."  Id. § 445.911(2).  Finally, the MCPA includes a provision to bring a class action: "*A person who suffers loss* as a result of a violation of [the MCPA] may bring a *class action* on behalf of persons residing or injured in [Michigan] for the actual damages" caused by any method, act, or practice defined as unlawful by the MCPA.  Id. § 445.911(3) (emphasis added); see also id. § 445.910(1)(a) (authorizing the state attorney general to bring a class action on behalf of persons residing in or injured in Michigan for actual damages).

Plaintiff does not dispute Pandora's contention that he has not alleged any actual injury as a result of Pandora's alleged violation of the MCPA.  Instead, citing MCL § 445.911(1), Plaintiff contends that he is not required to allege actual injury where, as here, he is only seeking injunctive relief.   Pl.'s Opp'n at 22.  Plaintiff is partially correct.  Under MCL § 445.911(1), an individual may pursue an *individual claim* under the MCPA for injunctive and/or declaratory relief.   However, Plaintiff overlooks that the *only* authorization to bring a class action under the MCPA is set forth in MCL § 445.911(3), which specifies that a *class action* may be brought by "[a] person *who suffers loss* as a result of a violation of this act[.]"  MCL § 445.911(3) (emphasis added).  There is no provision in the MCL permitting a class action solely for injunctive relief by a person who has not suffered actual loss.  Had the Michigan Legislature intended to provide such a remedy, it plainly could have done so.  See People v. Underwood, 750 N.W.2d 612, 614 (Mich. Ct. App. 2008) ("The omission of a provision in one statute that is included in another statute should be construed as intentional, . . . and provisions not included in a statute by the Legislature should not be included by the courts") (citations omitted).  The

- 16 -

fact that Michigan chose not to provide such a remedy compels the conclusion that Plaintiff lacks standing to bring a claim under the MCPA for injunctive relief on a class action basis where no actual injury is alleged.[7]

In sum, Plaintiff cannot maintain a class action against Pandora under the MCPA solely for injunctive relief; nonetheless, he may pursue an individual claim. Plaintiff also may be able to present a class action claim for damages under MCL § 445.911(3) upon a showing that he suffered an actual loss resulting from Pandora's alleged violations of the MCPA. Therefore, Plaintiff's claim under the MCPA is dismissed with leave to amend.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is GRANTED. Plaintiff is granted leave to amend, as set forth above. Plaintiff is advised that any additional factual allegations set forth in the amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11. Plaintiff shall file his amended pleading within fourteen (14) days of the date this Order is filed, and the failure to file do so may result in the dismissal of the action under Federal Rule of Civil Procedure 41(b).

2. The parties shall appear for a telephonic Case Management Conference on **October 11, 2012 at 2:30 p.m.** Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court. Plaintiff shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date. Plaintiff's counsel is to set up the conference call with all the parties on the line and call chambers at (510) 637-3559. NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

---

[7] In light of this conclusion, the Court need not reach Pandora's arguments regarding reliance.

3. This Order terminates Docket No. 20, 25 and 27.

IT IS SO ORDERED.

Dated: September 27, 2012

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge