FILED

**NOT FOR PUBLICATION**

FEB 24 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER DEACON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff - Appellant,<br><br> v.<br><br>PANDORA MEDIA, INC., a Delaware corporation,<br><br>    Defendant - Appellee. | No. 12-17734<br><br>D.C. No. 4:11-cv-04674-SBA<br>Northern District of California, Oakland<br><br><br>AMENDED ORDER |

Before: SCHROEDER and SILVERMAN, Circuit Judges and HUCK, Senior District Judge. [*]

  The present case requires us to decide, as a matter of Michigan law, the

proper interpretation of the terms "renting," "rents," "lending," and "borrows," as

those terms are used in Michigan's Video Rental Privacy Act ("VRPA"), M.C.L.

§§ 445.1711-15. Because there is no Michigan state court precedent interpreting

the VRP A, because this class action has the potential to affect the privacy rights of

millions of Michigan residents, and because the open questions of Michigan law in

this case have the potential to evade review by the Michigan courts due to the

---

  [*] The Honorable Paul C. Huck, Senior District Judge for the U.S. District Court for Southern Florida, sitting by designation.

-2-

jurisdictional operation of the Federal Class Action Fairness Act, we respectfully request that the Michigan Supreme Court exercise its discretion to decide the certified question set forth below.

## I.    Case Title

Peter Deacon, Plaintiff-Appellant, v. Pandora Media, Inc., Defendant-Appellee, Case No. 12-17734.

## II.    Statement of Facts

### A.    Factual Background

Pandora operates an internet radio service through its website located at www.pandora.com.  A person who wants to use Pandora's service creates a user account, and then builds customized radio stations based upon inputted musical preferences, i.e., specific artists, songs, or genres of music.  Pandora then streams[1] music to the user, selecting songs and adapting the playlist in real-time based on individual feedback received from the user.

When a user creates a Pandora account, "Pandora automatically creates a 'Personal Page' for [the] user containing the person's full name, profile information, most recent 'station,' recent activity, listening history, bookmarked

---

[1] "A stream is an electronic transmission that renders the musical work audible as it is received by the client-computer's temporary memory." *United States v. Am. Soc'y of Composers*, 627 F.3d 64, 74 (2d Cir. 2010).

-3-

tracks, and bookmarked artists (collectively referred to as 'Protected Information')." Deacon alleges that Pandora discloses its users' "Personal Pages" and the accompanying "Protected Information" to the public via the World Wide Web.

To perform the process of streaming music to a user, Pandora "allows the user to temporarily store a digital copy of the song currently playing on their computer." Once the song is completed, Pandora removes the digital copy of the song from the user's computer. When a song is currently streaming on a user's computer through Pandora's service, the user can choose to stop the song from playing by pressing the skip button or by closing the browser. Pandora Form S-1 Reg. Stmt, at 70, 72 (filed Feb. 1, 2011) (available at http://www.sec.gov/ Archives/edgar/data/1230276/000119312511032963/ds1.htm).[2]

All users of Pandora's service must agree to its Terms of Use. Pandora's Terms of Use provide that each user shall not "copy, store, edit, change, prepare any derivative work of or alter in any way any of the tracks streamed through Pandora Services." Use of Pandora's service is free, but a premium version of the

---

[2] Although generally a court may not consider materials outside of the complaint in deciding a motion to dismiss, we may consider Pandora's S-1 Statement and Pandora's Terms of Use because Deacon's complaint relies on them and their authenticity is not contested. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

-4-

service without advertisements is available to users for a fee. Pandora Form S-1 Reg. Stmt, at 46.

Deacon is a resident of Michigan. He alleges that he is a user of Pandora's services and that he created a Pandora account around 2008. When Deacon created his Pandora account and agreed to Pandora's Terms of Use and its Privacy Policy, Pandora's Privacy Policy stated that his "Personal Page" and "Protected Information" could only be viewed by other registered Pandora users who knew Deacon's e-mail address and searched on Pandora's website for Deacon's "Personal Page" using that e-mail address. Deacon alleges that in violation of this privacy policy, "at all relevant times, Pandora disclosed [his] Protected Information to the public through its website, without [his] consent."

**B.    Procedural History**

On September 20, 2011, Deacon filed a class action complaint in the district court for the Northern District of California against Pandora, alleging causes of action for: (1) violations of Michigan's VRPA; and (2) violations of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903. The federal court has jurisdiction over the matter under 28 U.S.C. § 1332(d)(2)(A) because Deacon and Pandora have diverse citizenship, the putative class has at least 100 members, and the amount in controversy exceeds $5,000,000. *See Baumann v. Chase Inv. Servs.*

-5-

*Corp.*, 747 F.3d 1117, 1120 (9th Cir. 2014).  Subsequently, Pandora filed a motion

to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim and for lack of standing.

On September 28, 2012, the district court granted Pandora's motion to

dismiss the complaint with leave to amend.  The district court concluded that

Deacon failed to properly state a claim for violation of the VRPA and he lacked

standing to bring the MCPA claim on a class action basis.  Only the district court's

determination as to Deacon's VRPA claim is at issue in this appeal.

With respect to his claim for violation of the VRPA, the district court first

concluded that Deacon had standing to bring his VRPA claim against Pandora.

The district court then went on to conclude that the claim should be dismissed

because Deacon had failed to adequately allege that the VRPA applied to Pandora

because there were no allegations in the complaint showing that Pandora is

"engaged in the business of selling at retail, renting, or lending . . . sound

recordings."  In reaching this conclusion, the district court analyzed the terms:

"renting," "borrows," "lending," and "sells."

With respect to the term "renting," the district court explained that the term

"rent" is commonly defined as "'consideration paid [usually] periodically for *use* . .

. of property[,]'" and the term "use" means "'to put into action or service.'"

-6-

(emphasis added by the district court). The district court concluded, therefore, that Deacon had failed to allege that Pandora "rents" sound recordings because he did not allege that he paid any consideration to Pandora in exchange for its services. In addition, the district court determined that Deacon had failed to adequately allege "use" of the song files. The district court explained that "use" requires a volitional act by the user, but Pandora users do not engage in any volitional act with respect to the song files placed on their computers by Pandora because the songs are selected by Pandora and Pandora exercises control over the song files the entire time they are on the user's computer. The district court also rejected Deacon's assertion that Pandora allows its users to "borrow" digital sound recordings. The district court explained that the term "borrow" means "to receive with the implied or expressed intention of *returning the same* or an equivalent." (emphasis added by the district court). But, here, the song file is never returned to Pandora because, as Deacon alleges, the song file is deleted from the user's computer upon completion of the song.

With respect to the term "lending," the district court explained that the term "lend" is commonly defined as "'[t]o allow the temporary *use* of (something) sometimes in exchange for compensation, *on the condition that the thing or its equivalent be returned*.'" (emphasis added by the district court). The district court

-7-

also explained that the term "borrow" means "to receive with the implied or expressed intention of *returning the same* or an equivalent." (emphasis added by the district court). The district court concluded, therefore, that Deacon had failed to allege that Pandora "lends" sound recordings because, as the district court previously found, he had failed to adequately allege "use."

With respect to the term "sells," the district court explained that the term "sell" is commonly defined as "'to give up (property) to another for something of value (as money).'" The district court concluded, therefore, that Deacon had failed to allege that Pandora "sells" sound recordings because Deacon conceded that when a user purchases a song by clicking a link on the Pandora player, the sale is between the user and a third-party vendor, not Pandora. The district court also noted that Deacon failed to allege in the complaint that Pandora had disclosed any of these alleged "sales" to the public.

In addition, the district court concluded that Deacon's assertion that Pandora rents, lends, or sells sound recordings is inconsistent with federal copyright law. The district court explained that Pandora operates solely under public performance licenses, and that under federal copyright law, these licenses do not give Pandora the right to sell, rent, or lend the licensed sound recordings. Therefore, Pandora could not sell, rent, or lend these sound recordings without running afoul of

-8-

copyright law.  The district court, thus, concluded that it would be incongruous to find that Pandora sells, rents, or lends sound recordings under the VRPA.

Following the dismissal of his complaint with leave to amend, Deacon filed a notice stating that he would stand on the allegations in the original complaint, and requesting the entry of final judgment.  Following this notice, the district court dismissed the action with prejudice and entered judgment.  This timely appeal followed.

## III.   Explanation of Certification

Pursuant to Michigan Court Rule 7.305(B), when "consider[ing] a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Michigan Supreme Court."  Further, "[w]e invoke the certification process only after careful consideration and do not do so lightly.  The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts."  *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-80 (1997) (detailing the reasons for and benefits of the certification process).  The present case meets these requirements.

-9-

The VRPA prohibits any person or company "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." M.C.L. § 445.1712. The term "customer" is defined in the VRPA as "a person who purchases, rents, or borrows a book or other written material, or a sound recording, or a video recording." *Id.* § 445.1711(a). Under the VRPA, any person who violates the act is guilty of a misdemeanor. *Id.* § 445.1714. The VRPA also allows a "customer" to bring a civil action against anyone who violates the act, where the customer may recover "[a]ctual damages, including damages for emotional distress, or $5,000.00, whichever is greater[,]" and "[c]osts and reasonable attorney fees." *Id.* § 445.1715.

On appeal, Deacon challenges the district court's determination that his VRPA claim should be dismissed because he failed to adequately allege that Pandora is engaged in the business of "renting" or "lending" sound recordings.[3] Specifically, Deacon argues that the district court erred in determining that the

---

[3] Deacon does not challenge on appeal the district court's conclusion that he failed to adequately allege that Pandora is engaged in the business of "selling at retail" sound recordings.

-10-

terms "rent" and "lend" require payment, physical possession, and return of the item. Deacon also argues that the district court erred in finding that he had failed to allege "use" of the sound recordings, and that the district court erred in relying on federal copyright law to interpret the VRPA. In response, Pandora argues that the district court properly found that the term "rent" requires some payment of money and that both "rent" and "lend" require some sort of possession and use. Pandora also argues that the district court properly relied on copyright law as an interpretive aid in construing those terms. Accordingly, resolution of the present appeal turns on what the terms "renting," "rents," "lending," and "borrows" mean as those terms are used in the VRPA.

Although the VRPA contains some statutory definitions, *see* M.C.L. § 445.1711, the VRPA does not define the terms "rents," "renting," "lending," or "borrows." Further, there appears to be no case law from any Michigan court interpreting the meaning of these terms or the VRPA in general. Thus, the present appeal rests on a novel issue of state law that has not been resolved by the Michigan courts and is not controlled by Michigan Supreme Court precedent. Moreover, Deacon's appeal presents significant issues, with important public policy ramifications. In the complaint, Deacon alleges that the number of class members is in the millions. Thus, resolution of the issues in this appeal has the

-11-

potential to affect the privacy rights of millions of Michigan residents. We also note that VRPA claims are often brought as part of a putative class action. *See, e.g., Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 U.S. Dist. LEXIS 118613, at *1 (E.D. Mich. Aug. 26, 2014); *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 677 (E.D. Mich. 2013); *Halaburda v. Bauer Publ. Co.*, No. 12-CV-12831, 2013 U.S. Dist. LEXIS 109954, at *2 (E.D. Mich. Aug. 6, 2013). Due to the operation of the federal Class Action Fairness Act, many cases of this type have been and likely will continue to be filed in or removed to federal court and thus evade review by the Michigan courts. *See Kilby v. CVS Pharm., Inc.*, 739 F.3d 1192, 1196 (9th Cir. 2013).

In sum, the present case turns on a novel issue of Michigan law that has the potential to affect the rights of millions of Michigan citizens and the potential to evade review by the Michigan courts. "In a case such as this one that raises a new and substantial issue of state law in an arena that will have broad application, the spirit of comity and federalism cause us to seek certification." *Kremen*, 325 F.3d at 1038.

**IV.     The Question to be Answered**

Pursuant to Michigan Court Rule 7.305(B), the Court hereby certifies the following question of law for consideration by the Michigan Supreme Court:

-12-

**1.     Has Deacon stated a claim against Pandora for violation of the VRPA by adequately alleging that Pandora is the business of "renting" or "lending" sound recordings, and that he is a "customer" of Pandora because he "rents" or "borrows" sound recordings from Pandora?**

Further, we note, as several other Court of Appeals have noted, that

the particular phrasing used in the certified question[s] is not to restrict the [Michigan] Supreme Court's consideration of the problems involved and the issues as the [Michigan] Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the [Michigan] Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriquez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968).

**V.     Directions to the Clerk and the Parties**

The Clerk of this Court shall forward an original and eight copies of this order, under official seal, to the Clerk of the Michigan Supreme Court, along with copies of all briefs and excerpts of record that have been filed with this Court.

The present case is stayed pending final action by the Michigan Supreme Court. The parties shall notify the Clerk of this Court within seven days of any decision by the Michigan Supreme Court to accept or decline certification. If the Michigan Supreme Court accepts certification, the parties shall file a joint report

-13-

six months after the date of acceptance and every six months thereafter advising us

of the status of the proceedings.  The parties shall notify the clerk of this court

within seven days of the issuance of an opinion by the Michigan Supreme Court.

The panel retains jurisdiction over further proceedings.



Barry G. Silverman
Circuit Judge for the United States Court of
Appeals for the Ninth Circuit

-14-

## COUNSEL LISTING

Jay Edelson (jedelson@edelson.com)
Ari Jonathan Scharg (ascharg@edelson.com)
Ryan D. Andrews (randrews@edelson.com)
James Dominick Larry (nlarry@edelson.com)
Edelson LLC
Suite 1300
350 N. LaSalle St.
Chicago, IL 60654
(312) 589-6379
Attorneys for Plaintiff-Appellant Peter Deacon

Marc Zwillinger (marc@zwillgen.com)
ZwillGen PLLC
1705 N Street, NW
Washington, DC 20036
(202) 296-3585
Attorney for Defendant-Appellee Pandora Media, Inc.

Jacob A. Sommer (jake@zwillgen.com)
ZwillGen PLLC
Suite # 250
1900 M St., NW
Washington, DC 20036
(202) 706-5205
Attorney for Defendant-Appellee Pandora Media, Inc.

Michele D. Floyd (mfloyd@srclaw.com)
Sacks, Ricketts & Case LLP
Suite # 650
177 Post Street
San Francisco, CA 94108
(415) 504-3070
Attorney for Defendant-Appellee Pandora Media, Inc.